**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**
**HARRISONBURG DIVISION**

| | | |
|---|---|---|
| **CAROLYN OLECH,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Case No. 5:25-CV-00152** |
| | ) | |
| **v.** | ) | |
| | ) | **DEFENDANT'S** |
| **MICHAEL STAPLETON ASSOCIATES, LTD.,** | ) | **MEMORANDUM IN SUPPORT** |
| **d/b/a MSA SECURITY, INC.** | ) | **OF ITS MOTION TO DISMISS** |
| | ) | **THE COMPLAINT OR, IN THE** |
| **Defendant.** | ) | **ALTERNATIVE, A MOTION TO** |
| | ) | **STRIKE PORTIONS OF THE** |
| | ) | **COMPLAINT** |

Respectfully submitted,

Date: March 24, 2026

*/s/ Daniel S. Ward*

Daniel S. Ward (VSB 45978)
Ryan C. Berry (VSB 67956)
Chelsea A. Cruz (VSB 96177)
WARD & BERRY, PLLC
1751 Pinnacle Drive, Suite 900
Tysons, VA 22102
(202) 331-8160
(202) 505-7100 Fax
dan@wardberry.com
ryan@wardberry.com
chelsea@wardberry.com

*Attorneys for Defendant Michael Stapleton Associates, Ltd., d/b/a MSA Security, Inc.*

## TABLE OF CONTENTS


I. INTRODUCTION ....................1

II. BACKGROUND ....................1

III. LEGAL STANDARD ....................3

IV. ARGUMENT ....................4

- a. FRCP12(b)(6) Requires This Complaint Be Dismissed For Failure To State A Claim ....................5
  - i. Olech's admissions in the Complaint eviscerate her retaliation claim ....................5
  - ii. The Complaint fails to assert a causal connection for certain alleged adverse actions....................6
  - iii. The Complaint requests remedies not permitted under 41 U.S.C. § 4712....................9
  - iv. The Complaint's unsubstantiated allegations of bias regarding DoS officials must be dismissed ....................11
  - v. The Complaint makes false statements of law....................12
- b. Any Allegations that Olech Did Not Present to the DoS OIG Are Not Ripe for Judicial Determination and Must Be Stricken or Dismissed Pursuant to Fed. R. Civ. P. 12(f)....................13

V. CONCLUSION ....................17

# TABLE OF AUTHORITIES

**Cases** **Page**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........................................ 3, 4

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ........................................ 3

*Chacko v. Patuxent Inst.*,
429 F.3d 505 (4th Cir. 2005) ........................................ 15

*Clark v. Brown*,
536 F. Supp. 3d 56, 61 (E.D. Va. 2021) ........................................ 14

*Cobell v. Norton*,
226 F.R.D. 67 (D.D.C. 2005) ........................................ 10

*Flamberg v. SunTrust Mortg. Inc.*,
No. 2:12-CV-00200-RWS, 2012 WL 4060086, at *2 (N.D. Ga. Sept. 14, 2012) ............ 13

*Fleming v. Spencer*,
718 F. App'x 185 (4th Cir. 2018) ........................................ 14

*Gerner v. Cty. of Chesterfield Va.*,
674 F.3d 264 (4th Cir. 2012) ........................................ 4

*Henderson v. City of Roanoke*,
504 F. Supp. 3d 530 (W.D. Va. 2020) ........................................ 4

*Iovino v. Michael Stapleton Assocs.*,
600 F. Supp. 3d 610 (W.D. Va. 2022) ........................................ 4, 14, 15

*Iovino v. Michael Stapleton Assocs.*,
No. 5:21-cv-00064, ECF 93 (W.D. Va. Dec. 12, 2022) ........................................ 2

*Iovino v. Michael Stapleton Assocs.*,
No. 5:21-cv-00064, ECF 67 (W.D. Va. Oct 13, 2022) ........................................ 2

*Ironworks Dev. LLC v. Truist Bank*,
574 F. Supp. 3d 376 (W.D. Va. 2021) ........................................ 4

*Lancaster v. Michael Stapleton Assocs.*,
No. 5:23-cv-00063, 2024 WL 1977175, at *3–4 (W.D. Va. May 3, 2024) ................ 14, 15

*Lancaster v. Michael Stapleton Assocs.*,
No. 5:23-cv-00063, ECF 45 (W.D. Va. Sept. 3, 2025)........................................................2

*Lane v. Bayview Loan Servicing LLC*,
No. 2:18-cv-1352-RDP, 2018 WL 6446643, at *5 (N.D. Ala. Dec. 10, 2018) .................13

*Laurent-Workman v. Wormuth*,
54 F.4th 201 (4th Cir. 2022) ..............................................................................7, 8

*Nahum v. Boeing Co.*,
No. 2:19-cv-1114-BJR, 2019 WL 6878242 at *5 (W.D. Wash. Dec 17, 2019)................10

*Ostrer v. Luther*,
668 F. Supp. 724 (D. Conn. 1987).........................................................................12

*Renaissance Greetings Cards, Inc. v. Dollar Tree Stores, Inc.*,
227 F. App'x 239 (4th Cir. 2007) ............................................................................4

*Wilcox v. Lyons*,
970 F.3d 452 (4th Cir. 2020) .................................................................................8

**<u>Statutes and Rules</u>**

22 C.F.R. Part 172 ..........................................................................................3

41 U.S.C. § 4712 .............................................1, 2, 3, 4, 5, 7, 9, 10, 11, 12, 13, 14, 15, 16, 17

Fed. R. Civ. P. 12 ..........................................................................1, 3, 4, 5, 13

Defendant Michael Stapleton Associates, Ltd., d/b/a MSA Security, Inc. ("MSA"), through counsel, respectfully submits this memorandum in support of its motion to dismiss the Complaint, pursuant to Fed. R. Civ. P. 12(b)(6) or, in the alternative, to strike portions of the Complaint pursuant to Fed. R. Civ. P. 12(f).

## I. INTRODUCTION

Plaintiff, Carolyn Olech ("Olech"), filed this one-count action for "discrimination in violation of 41 U.S.C. § 4712," alleging that MSA terminated her in retaliation for engaging in alleged whistleblowing (the "Complaint"). ECF 1. Olech's Complaint fails to state a claim upon which relief can be granted. Fed. R. Civ. P. ("FRCP") 12(b)(6). Alternatively, portions of Olech's Complaint should be stricken because she has failed to exhaust her administrative remedies as required by 41 U.S.C. § 4712(c)(2).

## II. BACKGROUND

MSA is engaged in the business of providing security, intelligence, and investigative services, including explosive-detection canine screening services. MSA operates the DoS Diplomatic Security Canine Training & Operations Center ("DSCTOC") (known at other times as the "CVC", "GCC", and "GCSC") in Winchester, Virginia, pursuant to government contracts with the U.S. Department of State ("DoS") to train and test explosive detection canines and their handlers. Compl. ¶¶ 9, 13. Olech began working as a full-time veterinarian with MSA on its government contract at the DSCTOC on June 6, 2016. *Id.* ¶¶ 11–12.

On February 7, 2022, two MSA employees received a letter from the Virginia Department of Health Professions ("DHP") inquiring about the death of a DoS canine at the DSCTOC on August 6, 2021 (the "Incident"). *Id.* ¶ 21.

Veterinary records concerning the Incident ("Encounter Notes"), drafted by Olech, were attached to the DHP letter. *Id.* These Encounter Notes (and all records generated by MSA employees in providing services to DoS) are the exclusive property of the U.S. Government, per MSA's contract with DoS (the "DoS Contract").[1] Under the DoS Contract, MSA and its employees have a contractual duty to safeguard such records from disclosure and to immediately report any unauthorized disclosure to the U.S. Government.[2] The DoS Contract required the entry of a protective order in two other cases pending against MSA right now (all three of which were brought by the Government Accountability Project (counsel for Olech, Iovino, and Lancaster)), alleging violations of 41 U.S.C. § 4712.[3]

Because these Encounter Notes are government property pursuant to the DoS Contract, MSA launched an internal investigation into how DHP obtained the Encounter Notes. Compl. ¶ 22. On February 24, 2022, MSA placed Olech on paid administrative leave while it continued to investigate the improper disclosure of DoS information to DHP and Olech's involvement. *Id.* ¶ 22. On July 6, 2022, having coordinated with Olech's counsel, MSA's outside counsel interviewed Olech about her suspected removal of DoS records. *Id.* ¶ 23. During the interview Olech admitted to sending a number of documents from her DSCTOC.US email to her personal email address. *Id.* In light of Olech's admitted violations of: 1. the MSA Code of Conduct and 2. Olech's Employee Confidentiality, Invention Assignment and Non-Solicitation Agreement, MSA terminated Olech's employment on July 19, 2022.

---

[1] *See Iovino v. Michael Stapleton Assocs. Ltd.*, No. 5:21-cv-00064, ECF 93 at 7 (W.D. Va. Dec. 12, 2022) (citing to the DoS Contract and explaining that "[t]he Contract strictly mandates MSA to keep all State Department materials confidential").

[2] *Id.*

[3] *Lancaster v. Michael Stapleton Assocs. Ltd.*, No. 5:23-cv-00063, ECF 45 (W.D. Va. Sept. 3, 2025) (entering the Confidentiality Order); *Iovino v. Michael Stapleton Assocs. Ltd.*, No. 5:21-cv-00064, ECF 67 (W.D. Va. Oct. 13, 2022) (entering the Confidentiality Order).

On February 2, 2023, Olech filed a complaint with the DoS Office of Inspector General ("OIG"), alleging "that MSA placed her on paid administrative leave and subsequently terminated her employment after she raised concerns of employee misconduct and other issues to MSA management, OIG, and the Virginia Board of Veterinary Medicine, a division of Virginia's Department of Health Professions (DHP)." *Id.* ¶ 4; *see also* **Exhibit 1** (01/02/24 OIG Report)[4] at 2.

On January 2, 2024, after investigating Olech's complaint, DoS "OIG found that while Dr. Olech made at least one protected disclosure that contributed to the termination of her employment, MSA provided clear and convincing evidence that it would have taken the adverse personnel actions regardless of her disclosures." Compl. ¶ 5; *see also* Exhibit 1 at 1. On June 25, 2024, after reviewing the OIG's administrative record and conclusion, DoS found that "MSA did not subject Dr. Olech to improper reprisal in violation of 41 U.S.C. § 4712." Compl. ¶ 6; *see also* **Exhibit 2** (06/25/24 DoS Letter) at 7.[5] Dissatisfied with DoS's decision to deny relief under 41 U.S.C. § 4712, Olech filed the present lawsuit against MSA alleging a single claim of "Discrimination in violation of 41 U.S.C § 4712." ECF 1 at 12–14.

## III. LEGAL STANDARD

On a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

[4] Exhibits 1 and 2 are a non-public government records and "official information" as defined in DoS's *Touhy* Regulations, 22 C.F.R. Part 172. Undersigned counsel has requested but not yet obtained *Touhy* authorization from DoS to attach these documents. Undersigned counsel will provide the Court and opposing counsel with a copy of these exhibits once MSA receives DoS authority to do so. Defendant is informed and believes that Olech and her counsel already have copies of these documents.

[5] *Id.*

570 (2007)). This "plausibility" standard requires the reviewing court to accept as true all factual allegations in the complaint. *Gerner v. Cty. of Chesterfield Va.*, 674 F.3d 264, 266 (4th Cir. 2012). Deciding whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. 662 at 679.

Facts that only show a "sheer possibility" or "mere consistency" with "unlawful conduct" will not support a reasonable inference from the court that the defendant is liable for any alleged misconduct. *Ironworks Dev. LLC v. Truist Bank*, 574 F. Supp. 3d 376, 379 (W. D. Va. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "Legal conclusions are not entitled to a presumption of truth even at the pleadings stage." *Iovino v. Michael Stapleton Assocs.*, 600 F. Supp. 3d 610, 622 (W.D. Va. 2022). Naked assertions void of further factual enhancement are insufficient to overcome a motion to dismiss. *Henderson v. City of Roanoke*, 504 F. Supp. 3d 530, 534 (W. D. Va. 2020).

Pursuant to Fed R. Civ. P. 12(f), the Court may strike from any pleading "any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). In applying such rule, a district court has broad discretion in deciding whether to strike matters from pleadings. *Renaissance Greetings Cards, Inc. v. Dollar Tree Stores, Inc.*, 227 F. App'x 239, 246 (4th Cir. 2007).

## IV. ARGUMENT

While Olech's Complaint purports to seek *de novo* review under 41 U.S.C. § 4712 of DoS's denial of her whistleblower reprisal claim, in her Complaint she: (1) admits that she took DoS information without authorization; (2) fails to establish a causal connection between her alleged protected conduct and any adverse actions suffered; (3) requests remedies not permitted by statute;

(4) makes unsubstantiated allegations of bias regarding DoS officials; (5) makes false statements of law; and (6) raises numerous "new" matters that she did *not* include in her whistleblower reprisal claim at DoS, which were therefore *not investigated* by the OIG as reprisals and *not decided* by the senior agency official pursuant to 41 U.S.C. § 4712.

Olech's Complaint is therefore not properly before this Court for two reasons. First, the Complaint fails to state a claim upon which relief can be granted. FRCP 12(b)(6). Second, because Olech has not exhausted her administrative remedies as required by 41 U.S.C. § 4712 as to the "new" matters raised in the Complaint, the references and allegations in the Complaint to these "new" matters is not properly before this Court and must be stricken.

**a. FRCP12(b)(6) Requires The Complaint Be Dismissed For Failure To State A Claim.**

*i. Olech's admissions in the Complaint eviscerate her retaliation claim.*

The Complaint admits conduct that provides a legitimate, non-retaliatory basis for the adverse actions and breaks any causal chain between protected activity and termination.

First, the Complaint states that, during an interview with MSA's outside counsel on July 8, 2022, Olech admitted emailing DoS documents, including canine records and incident reports, to her personal email address. Compl. ¶ 23. Olech admits misconduct unrelated to whistleblowing and thus supplies a non-retaliatory rationale for her discharge.

Second, the Complaint states that MSA terminated her employment on July 19, 2022, citing violations of MSA's Code of Conduct and the Employee Confidentiality, Invention Assignment and Non-Solicitation Agreement. Compl. ¶ 25. By Olech's own admission, the termination was predicated on confidentiality and document-handling violations, not on any protected disclosures she may have made.

Third, the Complaint concedes the causal nexus between MSA finding out that Olech had taken and shared DoS documents and information and MSA placing Olech on administrative leave to further investigate. The Complaint states that, "[o]n February 7, 2022, the Virginia DHP sent notice to Ms. [Jennifer] Houston and another veterinarian that it was investigating allegations that Ms. Houston had operated as a veterinary technician without a valid license when tending to the canine during the August 6, 2021 incident. ***The notice included the Encounter Notes written by Dr. Olech.***" Compl. ¶ 21 (emphasis added). The Complaint states that Olech was then placed on administrative leave on February 23, 2022 while MSA investigated. Compl. ¶ 57. During MSA's investigation, Olech admitted to emailing DoS documents, including canine records and incident reports, to her personal email address. Compl. ¶ 23. The sequence of events outlined in the Complaint reflects an employer investigating document control issues and acting on policy violations rather than retaliating against protected reports.

Finally, the Complaint acknowledges that DoS OIG determined that, although Olech "made at least one protected disclosure that contributed to the termination of her employment, MSA provided clear and convincing evidence that it would have taken the adverse personnel actions regardless of her disclosures." Compl. ¶ 5.

The Complaint's admissions regarding Olech's unauthorized emailing and retention of DoS documents provide an independent, legitimate basis for Olech's termination that defeats, on its face, any retaliation claim.

*ii. The Complaint fails to assert a causal connection for certain alleged adverse actions.*

The Complaint does not plausibly allege that any protected disclosure was a contributing factor in the adverse actions identified. Instead, the Complaint relies on conclusory causation allegations untethered to specific decision-makers, lacks nonconclusory facts showing knowledge

and retaliatory animus by those who took the actions, and, where dates are provided, the timeline undermines any inference that disclosures contributed to the actions taken.

The Complaint merely alleges that "Dr. Olech's protected activities were a contributing factor in adverse actions taken against her" (Compl. ¶ 72) and that "[t]he temporal proximity between Dr. Olech's protected disclosures and the adverse actions taken against her supports an inference of causation" (Compl. ¶ 73). The Complaint, in many places, fails to state *when* some of the alleged protected disclosures occurred or provides a period so long that it is impossible to tell when something may have happened. Compl. ¶¶ 16, 17, 27, 28, 29, 32, 43, 44, 45. Further, the Complaint does not identify *who* at MSA with "the responsibility to investigate, discover, or address misconduct" decided to take any alleged adverse action against Olech. *See* 41 U.S.C. § 4712(a)(2)(G). The Complaint does not allege any nonconclusory facts that any decision-makers at MSA knew of Olech's alleged protected disclosures before taking any alleged adverse action(s) against Olech.

Although the Complaint asserts that "MSA had actual and constructive knowledge of all of Dr. Olech's protected activities," it offers no supporting facts tying such knowledge to specific dates, actions, and/or alleged "adverse actions." Compl. ¶ 71. Where dates are provided, the chronology spans seven years (2016 to 2022) and fails to state which alleged "adverse action" is attributed to which "protected disclosure."

For example, the Complaint states that Olech allegedly made protected disclosures between 2016 and 2022 (Section VII), and states that Olech was allegedly subjected to adverse employment actions throughout that same time period (Section VIII). Compl. ¶¶ 27–60. However, the Complaint does not provide *any* insight as to how these alleged protected disclosures resulted in these alleged adverse actions. *Laurent-Workman v. Wormuth*, 54 F.4th 201, 219 (4th Cir. 2022)

("Although there is no 'bright-line rule' for when temporal proximity helps or hurts a cause of action for retaliation, a two-month temporal gap 'between notice of the complaint and the adverse employment action is sufficiently long so as to weaken significantly the inference of causation between the two events.'") (internal citations omitted); *Wilcox v. Lyons*, 970 F.3d 452, 456, 464 (4th Cir. 2020) (affirming the court's conclusion "that the two-and-a-half month time span between [plaintiff's] report of alleged sex discrimination and her termination was too long to establish causation by temporal proximity alone"). A culmination of alleged "protected activity" that occurred over a period of seven years is insufficient to establish causation by temporal proximity. *Id.* This long timeframe and failure to connect any of the "protected activity" to any alleged "adverse action" defeat any plausible inferences that Olech's protected activity contributed to MSA's actions.

The timeline set forth in the Complaint merits dismissal of Olech's claim. As stated above, the Complaint alleges that MSA placed Plaintiff on paid administrative leave on February 23, 2022 after an internal investigation into the DHP's receipt of Encounter Notes. Compl. ¶ 22. The Complaint further alleges that MSA subsequently terminated Olech on July 19, 2022, for violating its Code of Conduct and confidentiality agreement. Compl. ¶ 25. The Complaint admits that Olech's termination was based on Olech's admissions of emailing DoS documents to her personal account. Compl. ¶¶ 23, 25.

The Complaint aggregates years of internal complaints, multiple external investigations, and a variety of workplace actions without matching a particular disclosure to a particular adverse decision, precluding a plausible inference that any disclosure contributed to any action. *Laurent-Workman*, 54 F.4th at 219; *Wilcox*, 970 F.3d at 456, 464. A culmination of alleged "protected

activity" that occurred over a period of seven years is insufficient to establish causation by temporal proximity. *Id.*

Stripped of conclusions, the Complaint alleges a panoply of gripes beginning in 2016, two OIG interviews in mid-2018, performance and role changes in 2019, and employer actions in 2022 grounded in an internal investigation and Plaintiff's admitted improper handling of DoS documents. Compl. ¶¶ 23, 27–45. That chronology, coupled with the absence of decisionmaker knowledge and animus allegations, fails to plausibly plead that any protected disclosure was a contributing factor to any identified adverse action. Indeed, the Complaint itself pleads non-retaliatory reasons advanced by MSA for the leave and termination, severing any causal chain. Compl. ¶ 23.

*iii. The Complaint requests remedies not permitted under 41 U.S.C. § 4712.*

41 U.S.C. § 4712(c)(1) outlines the "[r]emedy and enforcement authority" permitted under the statute. It states that if a complainant is entitled to relief, one or more of the following can occur:

> (A) Order the contractor, subcontractor, grantee, subgrantee, or personal services contractor to take affirmative action to abate the reprisal.
> (B) Order the contractor, subcontractor, grantee, subgrantee, or personal services contractor to reinstate the person to the position that the person held before the reprisal, together with compensatory damages (including back pay), employment benefits, and other terms and conditions of employment that would apply to the person in that position if the reprisal had not been taken.
> (C) Order the contractor, subcontractor, grantee, subgrantee, or personal services contractor to pay the complainant an amount equal to the aggregate amount of all costs and expenses (including attorneys' fees and expert witnesses' fees) that were reasonably incurred by the complainant for, or in connection with, bringing the complaint regarding the reprisal, as determined by the head of the executive agency.
> (D) Consider disciplinary or corrective action against any official of the executive agency, if appropriate.

§ 4712(c)(1).

Plaintiff's Prayer for Relief includes multiple remedies that are not available under 41 U.S.C. § 4712 ("the Statute") and thus should be dismissed or stricken. Compl. at 14, Part X. The Statute authorizes specific make-whole remedies against a contractor for reprisal, but it does not provide for general tort-style damages, reputational harm, equitable workplace notices, or other relief sounding in broader employment statutes. The Court should dismiss or Strike Plaintiff's demands that exceed the Statute's remedial scope. *See e.g.*, *Cobell v. Norton*, 226 F.R.D. 67, 75 (D.D.C. 2005) (finding that Plaintiff's substantive rights are created and governed by statute, and therefore, "to the extent plaintiffs seek relief beyond that provided by statute, their claims must be denied"); *see also Nahum v. Boeing Co.*, No. 2:19-cv-1114-BJR, 2019 WL 6878242, at *5 (W.D. Wash. Dec. 17, 2019) ("When faced with impermissible demands for relief, the Court will strike them.").

First, Plaintiff seeks "front pay for a period of at least five years" in the alternative to reinstatement. Compl. at 14, Part X(a). Demanding a fixed multi-year period untethered to evidentiary showings of unavailability of reinstatement and mitigation transforms the Statute's make-whole objective into an impermissible windfall. Such categorical, time-certain front pay is not authorized as a matter of right under 41 U.S.C. § 4712.

Second, Plaintiff seeks "an injunction directing MSA to remediate the hostile work environment, harassment, and intimidation to which it subjected Plaintiff." Compl. at 15, Part X(b). While the Statute provides contractor-whistleblower remedies for reprisal, it does not establish a hostile-work-environment cause of action or authorize affirmative, programmatic workplace injunctions characteristic of other employment statutes.

Third, Plaintiff seeks "economic damages for injury to career, professional reputation, and earning capacity." Compl. at 15, Part X(d). Reputational and speculative career-loss damages are not among the Statute's enumerated make-whole remedies for whistleblower reprisal.

Fourth, Plaintiff seeks "non-economic damages for mental and emotional distress, embarrassment and humiliation." Compl. at 15, Part X(e). Emotional distress and other non-economic damages are not authorized under the Statute's remedial scheme.

Fifth, Plaintiff requests "expungement of written warnings, reprimands, negative performance appraisals, and other derogatory information" from her personnel file. Compl. at 15, Part X(f). Plaintiff also asks for "[p]osting of a notice to MSA's employees indicating that MSA has been ordered to comply with 41 U.S.C. § 4712 and to make appropriate restitution to Plaintiff." Compl. at 15, Part X(g). The Statute does not authorize personnel-file expungement remedies or compelled public-notice postings.

Sixth, Plaintiff seeks to compel a "neutral employment reference." Compl. at 15, Part X(i). The Statute provides no such relief.

The requested remedies discussed above are not found in 41 U.S.C. § 4712. Plaintiff's sole claim for relief is under 41 U.S.C. § 4712. These requested remedies should be dismissed or stricken.

*iv. The Complaint's unsubstantiated allegations of bias regarding DoS officials must be dismissed.*

The Complaint's baseless attacks on agency officials should be stricken as immaterial and unrelated to Olech's 41 U.S.C. § 4712 claim. Compl. ¶ 6. The Complaint, without reason, alleges that a procurement official had a "predisposition" and "apparent conflict of interest" giving rise to a "denial of due process." *Id.* These assertions about administrative actors' bias are immaterial to *de novo* judicial review of a § 4712 claim in district court and are likely to confuse the issues and

prejudice Defendant by inviting collateral disputes about administrative proceedings. *See e.g.*, *Ostrer v. Luther*, 668 F. Supp. 724, 733–34 (D. Conn. 1987) ("Because administrative decisionmakers are afforded a presumption of honesty and integrity, unsubstantiated allegations of bias or misconduct are insufficient to state a claim upon which relief can be granted.").

*v. The Complaint makes false statements of law.*

¶ 67 of the Complaint states that "Olech made numerous protected disclosures to persons and bodies described in 41 U.S.C. § 4712(a)(1)," and lists the following as those "persons and bodies": Olech's supervisors and other management officials at MSA; DoS OIG; Virginia DPH; and Virginia Board of Veterinary Medicine. This is a false statement of law.

41 U.S.C. § 4712 specifically states that the following are "persons and bodies" covered under the statute:

> (A) A Member of Congress or a representative of a committee of Congress.
> (B) An Inspector General.
> (C) The Government Accountability Office.
> (D) A Federal employee responsible for contract or grant oversight or management at the relevant agency.
> (E) An authorized official of the Department of Justice or other law enforcement agency.
> (F) A court or grand jury.
> (G) A management official or other employee of the contractor, subcontractor, grantee, subgrantee, or personal services contractor who has the responsibility to investigate, discover, or address misconduct.

§ 4712(a)(2).

The Complaint states that Olech made "protected disclosures" to "Olech's supervisors and other management officials at MSA," but does not name who. Compl. ¶ 67. To the extent that these individuals are employees of MSA who do not have "the responsibility to investigate, discover, or address misconduct," they are **not** "persons and bodies" covered under the Statute.

The Complaint states that Olech made "protected disclosures" to "The Virginia Department of Health Professions (DHP)" and "The Virginia Board of Veterinary Medicine." Compl. ¶ 67. These are **not** "persons" or "bodies" covered under the Statute. 41 U.S.C. § 4712(a)(2).

As explained in detail below (*see infra* Part IV(b)), the Complaint consists of various allegations that Olech did not present to DoS OIG and, therefore, are not ripe for judicial determination and must be stricken from the Complaint. DoS OIG states that the only allegations Olech made at the OIG level were that she reported "to MSA management and others that a Veterinary Technician (Vet Tech) employed by MSA was routinely tardy or absent from work and that on several occasions smelled of alcohol and appeared to be inebriated." Exhibit 1 at 2. To the extent that Olech's "reports" were to DHP or the Virginia Board of Veterinary Medicine, as the Complaint alleges (Compl. ¶¶ 41–42), then the Complaint should be dismissed because those entities are not "persons and bodies" covered under § 4712. *See, e.g.*, *Flamberg v. SunTrust Mortg. Inc.*, No. 2:12–CV–00200–RWS, 2012 WL 4060086, at *2 (N.D. Ga. Sept. 14, 2012) (dismissing the complaint because it "is composed primarily of unsupported conclusory statements and inapplicable and/or incorrect statements of the law"); *see also, e.g.*, *Lane v. Bayview Loan Servicing LLC*, No.: 2:18-cv-1352-RDP, 2018 WL 6446643, at *5 (N.D. Ala. Dec. 10, 2018) ("Plaintiff's claim derives from an inaccurate statement of the law and is therefore due to be dismissed.").

**b. Any Allegations that Olech Did Not Present to DoS OIG Are Not Ripe For Judicial Determination And Must Be Stricken or Dismissed Pursuant To Fed. R. Civ. P. 12(f).**

The January 2, 2024 DoS OIG memorandum from Jeffrey McDermott concluding that MSA did not subject Olech to whistleblower reprisal under 41 U.S.C. § 4712 states that Olech's OIG complaint alleges that MSA retaliated against her "for reporting to MSA management and

others that a Veterinary Technician (Vet Tech) employed by MSA was routinely tardy or absent from work and that on several occasions smelled of alcohol and appeared to be inebriated." Exhibit 1 at 2; *see also* Compl. ¶ 5. That is the extent of Olech's complaint to the OIG.

41 U.S.C. § 4712 requires that a complainant administratively exhaust her remedies before suing in federal court. This Court has already discussed exhaustion of administrative remedies under the Statute in two other cases involving MSA and prior employees. *See Lancaster v. Michael Stapleton Assocs.*, No. 5:23-cv-00063, 2024 WL 1977175, at *3–4 (W.D. Va. May 3, 2024) ("Lancaster was required to administratively exhaust his remedies prior to bringing suit in federal court."); *Iovino v. Michael Stapleton Assocs.*, 600 F. Supp. 3d 610, 619 (W.D. Va. 2022) ("[W]histleblowers working for government contractors must exhaust their administrative remedies before suing in federal court.") This comes as no surprise to Olech, as she is represented by the same attorneys involved in both the *Lancaster* and *Iovino* lawsuits.

It is well established that when a statute provides that one must exhaust their administrative remedies, claims under such statute are judicially reviewable only if the plaintiff has administratively exhausted those claims by first presenting them to the appropriate agency, in this case, DoS's OIG. *Lancaster*, No. 5:23-cv-00063, 2024 WL 1977175, at *3–4; *Iovino*, 600 F. Supp. 3d at 619; *Clark v. Brown*, 536 F. Supp. 3d 56, 61 (E.D. Va. 2021) ("[C]ivil service claims are judicially reviewable only if the plaintiff has administratively exhausted those claims by first presenting them to the appropriate agency, in this case the MSPB."); *see also, e.g.*, *Fleming v. Spencer*, 718 F. App'x 185, 188 (4th Cir. 2018) ("The CSRA plainly precludes extrastatutory judicial review of constitutional claims that are asserted before an employee has exhausted his remedies under the statute"). The exhaustive framework of 41 U.S.C. § 4712 requires that such claims be reviewed on the administrative record, under a deferential review standard, and

precludes them from being brought in federal district court as free-standing claims. *Lancaster*, No. 5:23-cv-00063, 2024 WL 1977175, at *3–4; *Iovino*, 600 F. Supp. 3d at 619.

Under 41 U.S.C. § 4712(c)(2), a contractor is "deemed to have exhausted all administrative remedies *with respect to the complaint*," and permits contractor employees to file a civil action if, among other things, "the head of an executive agency issues an order denying relief." 41 U.S.C. § 4712(c)(2) (emphasis added). Given the ordinary meaning of the words "with respect to the complaint," 41 U.S.C. § 4712 provides that a contractor employee can only exhaust their administrative remedies regarding the complaint(s) they brought before the OIG, nothing more. Therefore, in Olech's case, her administrative remedies were exhausted as to the complaints she made to the OIG – nothing more.

Although Olech brought *some* allegations of reprisal to DoS seeking an administrative remedy, this lawsuit is replete with novel allegations of reprisal that were not made to, nor investigated by, the OIG, nor decided by DoS. This Court does not have jurisdiction over those novel allegations in Olech's Complaint.

Olech may argue that her new claims (*i.e.*, claims raised in her Complaint before this Court that were *not* raised in the agency proceedings) should be allowed to proceed despite her failure to exhaust her administrative remedies as to those claims because she should be permitted to "piggyback" on the claims she did exhaust. However, those allegations must be excluded. *Chacko v. Patuxent Inst.*, 429 F.3d 505, 506 (4th Cir. 2005) (finding that there has not been proper exhaustion when an administrative filing "reference[s] different time frames, actors, and discriminatory conduct than the central factual allegations in his formal suit").

Olech's Complaint brings the following allegations that, per the OIG, are not contained in her OIG complaint:

- Compl. ¶ 20. This paragraph states that "MSA employees administered tranquilizers," but does not state who. This vague assertion cannot be tied to Olech's OIG complaints.

- Compl. ¶¶ 26, 27. These paragraphs (almost identical) are vague catch-alls stating that Olech reported "misconduct" throughout her employment at MSA. This vague assertion cannot be tied to Olech's OIG complaints.

- Compl. ¶ 40, 44, 61. These paragraphs refer to Olech's alleged participation in other OIG investigations (unrelated to Olech's) and therefore cannot be tied to Olech's OIG complaints.

- Compl. ¶ 41. This paragraph refers to Olech's alleged discussions with the Virginia Board of Veterinary Medicine regarding "the death of [a] canine . . . ." This was not included in Olech's OIG complaints.

- Compl. ¶ 43, 45. These paragraphs are vague catch-alls stating that Olech "consistently raised concerns about inappropriate medical practices" and "urged corrective action." These vague assertions are completely devoid of any factual information and cannot be tied to Olech's OIG complaints.

- Compl ¶ 61. This paragraph states that MSA has a "pattern of overlooking or suppressing canine safety care concerns." Again, this "pattern" is not included in Olech's OIG complaint.

Likewise, the Complaint alleges numerous "adverse actions and hostile work environment facts" that were not included in Olech's OIG complaint. *Compare* Compl. Part VIII*, with* Exhibit 1 at 1. Mr. McDermott specifically states that Olech complained to the OIG that she was being retaliated against by (1) being placed on administrative leave, and (2) being terminated. Nothing more. The Complaint states the following "adverse actions" that are not contained in her OIG complaint: ¶¶ 47–56, 60. These "adverse actions" (¶¶ 47–56, 60) are unrelated to Olech's administrative leave and termination and therefore should be stricken as they were not investigated by the OIG.

Olech's complaint to the OIG did not include these allegations. Olech has failed to exhaust her administrative remedies under 41 U.S.C. § 4712. As such, the Court should strike these new

and novel allegations, as it does not have jurisdiction to rule on them without Olech first exhausting her administrative remedies under 41 U.S.C. § 4712.

## V. CONCLUSION

For all the reasons stated herein, Defendant MSA, respectfully requests that this Court grant its Motion to Dismiss Olech's Complaint or, alternatively, strike the allegations in Olech's Complaint that were not raised and/or decided at the administrative level, and direct Olech to submit an amended Complaint removing the offending matter and focusing solely on the narrow issues she brought to DoS OIG.

Respectfully submitted,

Date: March 24, 2026

*/s/ Daniel S. Ward*

Daniel S. Ward (VSB 45978)
Ryan C. Berry (VSB 67956)
Chelsea A. Cruz (VSB 96177)
WARD & BERRY, PLLC
1751 Pinnacle Drive, Suite 900
Tysons, VA 22102
(202) 331-8160
(202) 505-7100 Fax
dan@wardberry.com
ryan@wardberry.com
chelsea@wardberry.com

*Attorneys for Defendant Michael Stapleton Associates, Ltd., d/b/a MSA Security, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on March 24, 2026, I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the Western District of Virginia by using the CM/ECF system. I certify that the following participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Joshua Erlich (VA Bar No. 81298)
The Erlich Law Office, PLLC
1550 Wilson Blvd., Ste. 700
Arlington, VA22209
jerlich@erlichlawoffice.com

Stephani L. Ayers (*pro hac* admission pending)
Government Accountability Project
POB 1061
Medford, OR 97501
stephani@whistleblower.org

*Attorneys for Plaintiff*

*/s/ Daniel S. Ward*

Daniel S. Ward