**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**
**HARRISONBURG DIVISION**

**CAROLYN OLECH,**
*Plaintiff,*

v. Case No. 5:25-CV-00152

**MICHAEL STAPLETON ASSOCIATES, LTD.,**
**d/b/a MSA SECURITY, INC.**
*Defendant*,

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

**I. INTRODUCTION ....................................................................................................3**
**II. STATEMENT OF FACTS......................................................................................5**
**III. LEGAL STANDARD............................................................................................7**
A. Contributing Factor Framework.........................................................................7
B. Burden-Shifting and the Employer's Same-Action Defense ...............................8
C. De Novo Review in District Court......................................................................9
D. The Exhaustion Framework and 'Reasonably Related' Allegations ...................9
E. Plausibility Under Rule 8 ...................................................................................10
**IV. ARGUMENT ........................................................................................................11**
A. Olech's Alleged Document Handling Does Not Defeat the Claim at the Pleading Stage ..11
B. The Complaint Plausibly Alleges Contributing-Factor Causation.....................13
C. The OIG and Department of State Determinations Are Not Dispositive in This Court's De Novo Proceeding...................................................................................15
D. MSA's 'False Statements of Law' Argument Does Not Defeat the Complaint...................17
E. The Complaint's Additional Factual Allegations Are Reasonably Related to the Administrative Charge ........................................................................................18
F. The Requested Remedies Are Available Under § 4712 ......................................20
**V. CONCLUSION......................................................................................................22**

**TABLE OF AUTHORITIES**


- *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)....................................................................................4
- *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)……………………………………….4
- *Callahan v. HSBC Holdings plc*, 723 F. Supp. 3d 315 (S.D.N.Y. 2024)………....8, 10, 14
- *Carter v. Ball*, 33 F.3d 450 (4th Cir. 1994)……………………………………......13, 14
- *Chacko v. Patuxent Inst.*, 429 F.3d 505 (4th Cir. 2005)……………………………..10, 11
- *Feldman v. Law Enforcement Associates Corp.*, 752 F.3d 339 (4th Cir. 2014)...8, 1, 13-15
- *Finley v. Kraft Heinz Inc.*, 146 F.4th 382 (4th Cir. 2025)……………………………….14
- *Iovino v. Michael Stapleton Assocs.*, 600 F. Supp. 3d 610 (W.D. Va. 2022)...4, 10, 19, 20, ………………………………………………………………………………………22
- *Kappouta v. Valiant Integrated Services, LLC*, No. 3:20-cv-01501 (S.D. Cal. Oct. 14, 2021)……………………………………………………………………………9, 15
- *Lancaster v. Michael Stapleton Assocs.*, No. 5:23-cv-00063, 2024 WL 1977175 (W.D. Va. May 3, 2024)……………………………………………….4, 10, 17, 19, 20, 22
- *Laurent-Workman v. Wormuth*, 54 F.4th 201 (4th Cir. 2022)………………………….14
- *Marano v. Department of Justice*, 2 F.3d 1137 (Fed. Cir. 1993)…………………...8, 12
- *Moore v. University of Kansas*, No. 2:14-cv-02420 (D. Kan. Dec. 17, 2015)……....9
- *Murray v. UBS Securities*, LLC, 601 U.S. 23 (2024)………………………….4, 8, 11-12
- *Nahum v. Boeing Co.*, No. 2:19-cv-1114-BJR, 2019 WL 6878242 (W.D. Wash. Dec. 17, 2019)……………………………………………………………………………..21
- *Sharpe v. United States*, No. 7:23-cv-01673 (E.D.N.C. Jul. 10, 2024)……………….9, 15
- *Sydnor v. Fairfax County*, 681 F.3d 591 (4th Cir. 2012)……………………………..9, 18

- *Wilcox v. Lyons*, 970 F.3d 452 (4th Cir. 2020)……………………………………..14


**STATUTES AND RULES**


- 41 U.S.C. § 4712…………………………………………………………….passim
- 41 U.S.C. § 4712(a)(2)………………………………………………………....17-18
- 41 U.S.C. § 4712(c)(2)……………………………………………………...9, 15, 21
- 41 U.S.C. § 4712(c)(5)……………………………………………………………...15
- Fed. R. Civ. P. 8……………………….........................................................................6,passim
- Fed. R. Civ. P. 12(b)(6)……………………………………………..3-5, 13, 16, 18


## I. INTRODUCTION

Dr. Carolyn Olech is a veterinarian and whistleblower who reported serious misconduct at a Department of State canine facility operated by Defendant Michael Stapleton Associates, Ltd. ("MSA") and was terminated in retaliation for those protected disclosures. After exhausting her administrative remedies with the Office of Inspector General ("OIG") as required, Olech filed this action seeking compensatory damages and other relief under 41 U.S.C. § 4712, the contractor whistleblower statute.

MSA now moves to dismiss Olech's complaint under Federal Rule of Civil Procedure 12(b)(6). The motion is built on three basic fundamental legal errors. First, MSA conflates the employer's affirmative same-action defense—which the Supreme Court has mandated be proven by clear and convincing evidence only after the plaintiff establishes a *prima facie* case—with the plaintiff's pleading burden. Second, MSA asks this Court to apply a causation standard that does not apply here and that the Supreme Court has explicitly rejected: the "but-for" causation that

applies under Title VII or other statutes. Section 4712 uses the deliberately lower "contributing factor" standard, which requires only that protected activity be *a* factor, among others, in the adverse decision. *See Murray v. UBS Securities, LLC*, 601 U.S. 23 (2024). Third, MSA treats the OIG's administrative findings as dispositive in what the statute mandates to be a *de novo* proceeding, contrary to both the plain language of § 4712(c)(2) and the precedent of this Circuit and this District.

Dr. Olech alleges retaliation under 41 U.S.C. § 4712, and sets forth the necessary elements to support that pleading: (1) that she made protected disclosures regarding waste, fraud, abuse, violation of law, rule, or regulation at the DoS/MSA canine facility, (2) that MSA was aware of her disclosures, (3) that MSA took an adverse action, including here terminating her employment, and(4) that her protected activity was a contributing factor in the adverse actions and termination. Those allegations are sufficient under the pleading standard of FRCP 8 and the Supreme Court's framing in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). Under the controlling legal framework, that MSA articulates a “nondiscriminatory reason” for the discharge does not negate Olech's *prima facie* case, or all of the allegations set forth in the complaint, it merely shifts the burden to MSA to prove that same-action defense by clear and convincing evidence, a burden MSA cannot satisfy on a Rule 12(b)(6) motion.

This Court has already rejected MSA's core procedural arguments in two prior cases: *Lancaster v. Michael Stapleton Assocs.*, No. 5:23-cv-00063, 2024 WL 1977175 (W.D. Va. May 3, 2024), and *Iovino v. Michael Stapleton Assocs.*, 600 F. Supp. 3d 610 (W.D. Va. 2022). MSA's motion, couched in different language, asks this Court to reverse course. It should not. The motion should be denied in its entirety.

## II. STATEMENT OF FACTS

For purposes of a Rule 12(b)(6) motion to dismiss, the Court must accept as true all well-pleaded factual allegations in the Complaint and draw all reasonable inferences in the Plaintiff's favor. *Iqbal*, 556 U.S. at 678. The following facts are drawn from Dr. Olech's complaint (Doc. 1) unless otherwise noted.

MSA hired Dr. Olech on June 6, 2016, as a full-time veterinarian at the Department of State Canine Training and Operations Center ("DSCTOC"), a facility in Herndon, Virginia. (Doc. 1, Compl. ¶¶ 11–12). As a veterinarian at a federally operated facility, Dr. Olech was responsible for the health, care, and welfare of canines used in diplomatic security operations. She maintained detailed medical records and clinical notes regarding the condition of the animals in her care.

In the course of her employment, Olech discovered and documented serious misconduct and unsafe practices at the facility related to the care and treatment of canines in MSA's operational oversight. Beginning in late 2021 and continuing into early 2022, Olech made protected disclosures to MSA management, personnel, and other covered recipients regarding these deficiencies. (Doc. 1, Compl. ¶¶ 14–20). These disclosures included concerns about animal welfare violations, inappropriate handling, inadequate medical treatment, and other matters falling within the scope of 41 U.S.C. § 4712(a)(2). Olech also reported her concerns to the Office of Inspector General and to other covered persons and bodies as defined by the statute. (Doc. 1, Compl. ¶¶ 67–68).

On February 7, 2022, the Virginia Department of Health Professions ("DHP") sent notice to MSA employee Ms. Houston and another veterinarian that it was investigating allegations that Ms. Houston had operated as a vet tech without a valid license during the August 6, 2021 events that led to the death of canine Cezar 2485. (Doc. 1, Compl. ¶ 21). That letter contained Olech's

Encounter Notes, a clinical record in which Dr. Olech had documented her observations and professional judgment regarding the canine's condition and treatment. (Doc. 1, Compl. ¶ 21). The presence of Olech's detailed notes in the DHP letter is significant; Olech's protected communications and clinical findings triggered official investigatory inquiry and MSA was aware of her provision of evidence to regulators.

On February 24, 2022, MSA placed Olech on paid administrative leave. (Doc. 1, Compl. ¶ 22). No reason was initially provided. The timing of this forced leave—just seventeen days after the DHP letter containing Olech's Encounter Notes was sent—is temporally proximate to her protected disclosures and MSA's receipt of the formal notice regarding the canine death and Olech's clinical documentation.

On July 8, 2022, MSA's outside counsel interviewed Dr. Olech. (Doc. 1, Compl. ¶ 23). During that interview, Dr. Olech acknowledged she emailed certain documents, like canine records and incident reports, to her personal email address. *Id*. Canine records and incident reports formed the basis of the evidentiary support for Dr. Olech's advocacy on behalf of the canines under MSA's watch, such as when MSA failed to protect them from altered vet techs. (Doc. 1, Compl. ¶ 21). Olech had transmitted were those same clinical and observational materials—her Encounter Notes and related documentation—that she had used in making her protected disclosures about facility misconduct. (Doc. 1, Compl. ¶ 21).

On July 19, 2022, MSA terminated Olech's employment. (Doc. 1, Compl. ¶¶ 24–25). The stated reasons for termination were alleged violations of MSA's Code of Conduct and Confidentiality Agreement. (Doc. 1, Compl. ¶¶ 24–25). MSA did not, at that time or thereafter, cite safety concerns, performance deficiencies, or any other independent basis for the discharge.

The entirety of the justification centered on the document handling issue—the very documents Olech had relied upon in making her protected disclosures.

Following her termination, Dr. Olech filed a complaint with the Office of Inspector General on February 2, 2023. (Doc. 1, Compl. ¶ 4). The OIG investigated Olech's claim and made findings regarding the retaliation allegation. According to Olech's complaint, the OIG found that at least one of Olech's protected disclosures contributed to MSA's decision to terminate her. (Doc. 1, Compl. ¶ 5). However, the OIG also concluded that MSA had demonstrated, by clear and convincing evidence, that it would have taken the same action—termination for Code of Conduct and Confidentiality Agreement violations—regardless of Olech's protected activity. (Doc. 1, Compl. ¶ 5). The OIG therefore denied relief. Dr. Olech took the necessary steps to exhaust and filed this *de novo* action in district court against MSA, seeking compensatory damages, front pay, reinstatement (or front pay in lieu thereof), emotional distress damages, and other relief available under § 4712. Because the review is *de novo,* Dr. Olech is entitled to a completely new proceeding, process, discovery where she obtains MSA's heretofore hidden documents, and a current view of her evidence.

## III. <u>LEGAL STANDARD</u>

Section 4712 employs a deliberately low contributing-factor causation standard, not the stricter but-for causation framework that governs other employment statutes. Understanding this statutory design is essential to evaluating MSA's motion.

### A. <u>Contributing Factor Framework</u>

Under 41 U.S.C. § 4712, a whistleblower need prove only that her protected activity was a contributing factor in an adverse personnel action; she need not prove that the employer acted with retaliatory animus or that the protected activity was the sole or primary cause of the discharge.

*Murray v. UBS Securities, LLC*, 601 U.S. 23, 32 (2024). A "contributing factor" means "any factor which, alone or in connection with other factors, tends to affect in any way the outcome of the decision." *Marano v. Department of Justice*, 2 F.3d 1137, 1140 (Fed. Cir. 1993); see also *Murray*, 601 U.S. at 28. This is a materially lower bar than but-for causation.

The Fourth Circuit applies the same four-part prima facie framework in the analogous Sarbanes-Oxley Act (SOX) context, which shares the contributing-factor standard: (1) protected activity; (2) the employer's knowledge of the protected activity; (3) an unfavorable personnel action; and (4) contributing-factor causation. *Feldman v. Law Enforcement Associates Corp.*, 752 F.3d 339, 344 (4th Cir. 2014). At the pleading stage, Olech must plausibly allege the four prima facie elements; MSA's same-action rationale is the employer's burden if Dr. Olech makes that showing. See *Murray*, 601 U.S. at 28.

### B. <u>Burden-Shifting and the Employer's Same-Action Defense</u>

Once the plaintiff establishes a prima facie case under this framework, the burden shifts to the employer. The employer must demonstrate, by clear and convincing evidence, that it would have taken the same unfavorable personnel action absent the protected conduct. *Murray*, 601 U.S. at 28. Critically, the same-action defense is the employer's burden, not part of the plaintiff's prima facie case. *Feldman*, 752 F.3d at 345.

At the pleading stage, therefore, the question is whether the complaint plausibly alleges protected activity, employer knowledge, an unfavorable action, and contributing-factor causation. *See Callahan v. HSBC Sec. (USA) Inc.*, 723 F. Supp. 3d 315, 322-23 (S.D.N.Y. 2024). To permit dismissal on the ground that the employer has proffered an alternative explanation would be to collapse the burden-shifting framework, wrongly requiring the plaintiff to disprove the employer's story before the complaint survives the motion stage.

**C. De Novo Review in District Court**

After a complainant exhausts administrative remedies, the case proceeds in district court as a de novo action against the contractor. *Moore v. Univ. of Kansas*, 118 F. Supp. 3d 1242, 1253-54 (D. Kan. 2015). Section 4712 does not provide for judicial review of the Inspector General's initial threshold decision whether to investigate a complaint. Instead, § 4712(c)(2) provides that if relief is denied or 210 days pass without an order, the complainant may sue the contractor in district court for damages and other relief. *Sharpe v. United States*, No. 7:23-cv-1673-BO-RN, 2024 WL 3363846, at *3 (E.D.N.C. July 10, 2024), *aff'd*, No. 24-1651, 2025 WL 2505942 (4th Cir. Sept. 2, 2025). The statutory language commands de novo consideration.

In the analogous 10 U.S.C. § 4701 defense contractor whistleblower context, courts have held that an Inspector General report may be admissible as evidence but its legal conclusions are nonbinding, because the court retains final authority to make factual and legal determinations. *Kappouta v. Valiant Integrated Servs., LLC*, No. 3:20-cv-1501 TWR (BGS), 2021 WL 4806437, at *4 (S.D. Cal. Oct. 14, 2021), *aff'd*, 60 F.4th 1213view. (9th Cir. 2023). The OIG's adverse findings cannot be used as a shortcut to dismissal at the pleading stage; Dr. Olech is entitled to her *de novo* case before a federal jury.

**D. The Exhaustion Framework and 'Reasonably Related' Allegations**

When a defendant argues that the federal complaint exceeds the scope of the administrative filing, courts in this District apply the Fourth Circuit's 'reasonably related' standard. *Sydnor v. Fairfax County*, 681 F.3d 591, 594-95 (4th Cir. 2012). A plaintiff may include background and contextual allegations that add detail to the exhausted retaliation claim, so long as the theory of recovery remains the same.

This Court has applied that framework expansively in prior MSA cases. In *Lancaster v. Michael Stapleton Assocs., Ltd.*, No. 5:23-cv-00063, 2024 WL 1977175 (W.D. Va. May 3, 2024), the Court held that "including the additional background information about what [the plaintiff] discussed with OIG investigators does not expand his claims beyond what he exhausted." *Id*. at *6. The Court found that "nearly all of the allegedly objectionable paragraphs" provided either background or additional detail about the core claim. *Id*. Similarly, in *Iovino v. Michael Stapleton Assocs.*, 600 F. Supp. 3d 610 (W.D. Va. 2022), this Court permitted "contextualizing factual allegations" while striking only those allegations that "attempted to expand the plaintiff's theories of recovery." *Iovino* at 622-25; *Lancaster* at *6.

The critical distinction under this line of precedent is between expanding the theory of recovery on one hand, and elaborating the details of the same theory on the other. A plaintiff may not introduce materially different time frames, different actors, different conduct, or new legal theories. *Chacko v. Patuxent Inst.*, 429 F.3d 505, 511 (4th Cir. 2005). But where the complaint adds factual specificity to the same core claim of retaliation, the scope question is not grounds for dismissal; at most, it is a matter for narrowing through motion practice or at the summary judgment stage.

**E. Plausibility Under Rule 8**

Federal Rule of Civil Procedure 8 requires only that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief," not a detailed factual narrative or proof of each element. Fed. R. Civ. P. 8(a)(2). The Supreme Court has held that this plausibility standard does not require the plaintiff to plead her case with particularity. *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 556.

Because contributing-factor causation is a deliberately low threshold, temporal proximity and employer knowledge may support a plausible inference of causation, especially where the complaint alleges a direct sequence from disclosure to investigation to termination. *See Callahan*, 723 F. Supp. 3d at 324-25. Where a plaintiff plausibly alleges that protected activity and adverse action are temporally proximate, and that the employer was aware of the protected activity, contributing-factor causation is readily inferable. MSA cannot defeat that inference by offering an alternative explanation at the pleading stage; that is the function of the summary judgment motion or trial.

## IV. ARGUMENT

### A. Olech's Alleged Document Handling Does Not Defeat the Claim at the Pleading Stage

MSA's primary argument rests on a fundamental misapprehension of the pleading standard. MSA contends that because it had an independent, nondiscriminatory reason for terminating Olech—alleged violations of its Code of Conduct and Confidentiality Agreement—the complaint fails to state a claim. This argument collapses the employer's affirmative same-action defense into the plaintiff's pleading burden, contrary to the Supreme Court's framework in *Murray* and decades of Fourth Circuit precedent.

Under the controlling legal standard, a plaintiff alleging retaliation under § 4712 need not negate her employer's asserted rationale for the adverse action at the pleading stage. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 556; *Feldman*, 752 F.3d at 344 (setting forth elements and burden structure). Instead, the plaintiff must plead only that protected activity was a contributing factor in the decision—a purposely low threshold. Once the plaintiff crosses that threshold, the burden shifts to the employer to prove by clear and convincing evidence that it would have taken the same action anyway. *Murray*, 601 U.S. at 27-28.

The temporal and causal connection that Dr. Olech alleges is precisely the sort that permits plausible inference of contributing-factor causation. Dr. Olech made protected disclosures regarding serious misconduct, including violations of law, rule, or regulation. Those disclosures were documented in the Encounter Notes and clinical materials she prepared as a veterinarian and shared in her reports to federal and state regulators. When DHP forwarded those materials on February 7, 2022, MSA was aware of Olech's clinical findings and implicitly of her underlying concerns. Seventeen days later, on February 24, MSA placed Olech on administrative leave. Months later, after learning that Olech had emailed copies of her own clinical notes to her personal account (an act undertaken in the course of documenting the very misconduct she was reporting), MSA terminated her. The termination allegedly turned entirely on the document-handling issue—the same documents on which Dr. Olech had relied in making her protected disclosures.

This alleged sequence—disclosure, employer awareness, adverse action timed to and flowing from the disclosure—plausibly supports contributing-factor causation under the low standard recognized in *Murray* and *Marano*. *See Murray*, 601 U.S. at 28; *Marano*, 2 F.3d at 1140. MSA's proffered explanation (Code of Conduct violations) does not negate that inference; it merely shifts the burden to MSA, at summary judgment or trial, to prove by clear and convincing evidence that it would have fired Olech regardless of her protected activity. That burden-shifting is precisely what Congress designed when it enacted the contributing-factor framework.

Moreover, the pleading allegations cast doubt on whether MSA's stated reason is genuinely independent. Policy violations that would ordinarily result in discipline short of termination, or that would be handled differently were they truly the sole reason for discharge, may be pretextual. At the pleading stage, a court cannot conclusively resolve that question. But the temporal proximity, the connection between the protected disclosures and the documents at issue, and the

absence of any suggestion that MSA previously disciplined Olech for document handling render it plausible that the alleged policy violation was a pretext for retaliation. This Court need not resolve the pretext question on a 12(b)(6) motion; it need only find that Dr. Olech has plausibly alleged contributing-factor causation. She has.

**B. <u>The Complaint Plausibly Alleges Contributing-Factor Causation</u>**

Setting aside MSA's misapplication of the burden-shifting framework, the complaint independently and plausibly alleges contributing-factor causation through temporal proximity, employer knowledge, and the compressed timeline of adverse actions.

The law is clear that temporal proximity between protected activity and adverse action, combined with employer knowledge and absence of intervening causes, is sufficient to infer contributing-factor causation. Temporal proximity and employer knowledge can support a prima facie inference of contributing-factor causation, and the complaint here alleges both, along with a direct connection between the disclosures, the investigation, and the termination. *Carter v. Ball*, 33 F.3d 450, 460 (4th Cir. 1994); *Feldman*, 752 F.3d at 344, 348. MSA cannot defeat that inference by offering an alternative explanation at the pleading stage.

The timeline in Dr. Olech's complaint is compelling, even just tracking one protected disclosures. In January–February 2022, Dr. Olech was making protected disclosures and preparing her clinical Encounter Notes documenting facility misconduct. Those Encounter Notes reached DHP on February 7, 2022—evidence that MSA was aware of Olech's clinical findings and professional concerns. Seventeen days later, on February 24, MSA placed Olech on administrative leave, offering no explanation. Five months passed until July 6, 2022, when MSA's outside counsel interviewed Olech, at which point the company raised the document-handling issue. Thirteen days later, MSA terminated Olech.

This compressed sequence from disclosure to adverse action—protected disclosure (Feb), employer awareness (Feb 7), sudden forced leave (Feb 24), followed by a longer period where employer gets around to (after forcing a veterinarian to not provide animal care for five months) pretending to do a fair investigation 5 months later, and accusing a whistleblower of violating policy in her document handling (July 6) for documents in regulators' hands to try to protect the health of the explosive detection canines, to termination (July 19) —plainly alleges temporal proximity and causation. At the pleading stage, Rule 8 does not require Olech to prove that no other factor played any role; it requires only plausibility that protected activity was a contributing factor. *Twombly*, 550 U.S. at 556; *Iqbal*, 556 U.S. at 678. The complaint readily crosses that threshold.

MSA attempts to distinguish cases like *Carter* and *Feldman* by citing Title VII temporal-proximity precedent from outside the whistleblower context, such as *Laurent-Workman v. Wormuth*, 54 F.4th 201 (4th Cir. 2022), and *Wilcox v. Lyons*, 970 F.3d 452 (4th Cir. 2020). Those cases, however, apply but-for causation under Title VII, a stricter standard than the contributing-factor test. They are not controlling here. *Callahan*, 723 F. Supp. 3d at 324-25. The more lenient contributing-factor standard applied in SOX and § 4712 cases permits shorter temporal windows than Title VII dismissal cases because the causation bar is deliberately lower.

The Fourth Circuit's recent decision in *Finley v. Kraft Heinz Inc.*, 146 F.4th 382 (4th Cir. 2025), reinforces this point. In *Finley*, the court vacated summary judgment against a whistleblower, reaffirming that the contributing-factor standard is "broad and forgiving" and holding that an employer's asserted intervening event does not automatically sever the causal inference arising from close temporal proximity between protected activity and termination. *Id.* at 390–92. The *Finley* opinion clarified that in *Feldman*, causation was severed only because there

was *both* a sixteen-to-seventeen-month gap *and* a legitimate intervening event—not the intervening event alone. *Id.* at 391. Here, Olech's protected disclosure and her termination are separated by approximately five months, a timeline far more compressed than the gap that proved fatal in *Feldman*, and MSA identifies no legitimate intervening event independent of the very conduct Olech reported.

In short, the complaint plausibly alleges the four elements of the prima facie case: protected activity, employer knowledge, adverse action, and contributing-factor causation. MSA's motion should be denied on this ground alone.

## C. The OIG and Department of State Determinations Are Not Dispositive in This Court's De Novo Proceeding

MSA places significant weight on the OIG's conclusion that it would have taken the same action absent Olech's protected conduct. But § 4712(c)(2) establishes that this is a *de novo* proceeding, not deferential review of an agency decision. The OIG's findings hold no weight on this Court, or it would defeat the purpose of the *de novo* statute. In fact, because the DOS ultimately turned on her colleagues Lancaster and Iovino (despite the OIG initially making strong findings against MSA as corrupt retaliators), it makes sense that Dr. Olech would meet exhaustion requirements but not pour her heart into trying to convince higher up officials who were determined to find for the contractor no matter the evidence for the whistleblower. (Doc. 1, para. 6).

The statute is plain. After the complainant exhausts administrative remedies and relief is denied or 210 days pass, "the complainant may bring a de novo action at law or equity against the contractor . . . to seek compensatory damages and other relief available under this section." 41 U.S.C. § 4712(c)(2). This is a *de novo* action—not a petition for review of the OIG's order, and

not a proceeding in which the OIG's factual findings carry *Chevron* or any other deference. *Sharpe*, No. 7:23-cv-1673, at *3-4.

Courts have held that even in contexts where an agency has made factual findings, those findings are admissible but do not bind the court in a de novo civil action. *See Kappouta v. Valiant Integrated Servs., LLC*, No. 3:20-cv-1501 TWR (BGS), at *4 (S.D. Cal. Oct. 14, 2021) (analogous 10 U.S.C. § 4701 defense contractor whistleblower context). The OIG report, like any other document, may be offered as evidence by either party, but it is not entitled to precedential effect. The court, not the Inspector General, is the final arbiter of whether Dr. Olech has proven retaliation by a preponderance of the evidence.

Significantly, MSA cannot use the OIG report to sidestep the pleading stage. Even if the OIG's same-action findings were dispositive at trial (which they are not), they would be relevant to MSA's affirmative defense, not to whether Dr. Olech's complaint states a claim. To hold otherwise would allow any defendant who had presented evidence to an agency to wield a 12(b)(6) motion on the strength of an administrative decision in the defendant's favor—a result that would collapse the boundaries between dismissal motions and summary judgment motions, contrary to settled procedural law.

MSA's reliance on the OIG report is also problematic because it invites this Court to credit the agency's reasoning wholesale without examining whether the OIG applied the correct legal standard or gave appropriate weight to contributing-factor causation. The OIG is not a substitute for the judiciary. The complaint itself notes that the OIG found at least one protected disclosure contributed to MSA's decision but concluded MSA had met its same-action burden. (Doc. 1, Compl. ¶ 5). But the complaint does not set out the OIG's full reasoning, and the exhibits are examined herein. At the pleading stage, this Court cannot and should not assume that the OIG

applied the correct legal standard or that its factual findings were made on an adequate evidentiary record. In fact, the Court has reason to believe that they were not, with Dr. Olech having found her colleagues were betrayed by the higher ups at the federal agency that originally found for them, Dr. Olech raised with this Court conflicts of interest leading to denials of due process. (Doc. 1, Comp., Para. 6). This Court cannot cede its responsibility to an OIG; fact intensive inquiries belong to summary judgment and trial, where the full record is before the court.

**D. <u>MSA's "False Statements of Law" Argument Does Not Defeat the Complaint</u>**

MSA argues that Olech's references to disclosures to state agencies (Virginia Department of Health Professions, Virginia Board of Veterinary Medicine) and to other recipients constitute "false statements of law" because those entities may not fall within § 4712(a)(2)(G)'s definition of "covered persons." This argument conflates pleading sufficiency with definitional precision and ignores the law of scope-of-exhaustion determinations.

First, even if the Court found some of Dr. Olech's referenced disclosures were made to uncovered recipients, the complaint plainly alleges protected disclosures to covered recipients. The complaint states that Dr. Olech reported her concerns to the Office of Inspector General and to MSA management—both clearly covered. (Doc. 1, Compl. ¶¶ 14–20, 67–68). At the pleading stage, Olech need not segregate her disclosures by recipient type or prove that each and every person or entity to whom she spoke falls within the statutory definition. She must plead only that she made protected disclosures; the specific identity and coverage status of each recipient is a granular factual matter that may be clarified through discovery or at summary judgment.

Second, references to state-agency communications serve an important function-- they provide context for the exhausted retaliation claim. In *Lancaster*, this Court held that allegations providing background or contextual detail about a claim the plaintiff exhausted do not expand the

scope of the lawsuit and do not render the complaint deficient. *Lancaster*, 2024 WL 1977175, at *6–7. Dr. Olech's references to her communications with state bodies and other individuals are background to her core allegation that she reported facility misconduct, that MSA became aware of her concerns, and that MSA retaliated. That is the exhausted claim, and the complaint plausibly alleges it.

Third, the legal question of which recipients fall within § 4712(a)(2) is not appropriately resolved on a Rule 12(b)(6) motion. The statute's definition of covered persons is complex and may depend on granular facts about the timing, content, and form of disclosures. The complaint's allegations, taken as true, are sufficient to plead retaliation in violation of § 4712. If discovery reveals that certain disclosures fell outside the statute's scope, that issue can be resolved through a more targeted motion or at summary judgment. To dismiss the entire action at the pleading stage because the complaint references communications with multiple recipients would be to impose an unjustified pleading burden.

### E. <u>The Complaint's Additional Factual Allegations Are Reasonably Related to the Administrative Charge</u>

MSA contends that Dr. Olech's complaint contains allegations that exceed the scope of what she exhausted before the OIG. However, this Court has already addressed and rejected nearly identical arguments in prior cases, and the controlling precedent of the Fourth Circuit and this District leads to the rejection of MSA's position here. The governing framework is the Fourth Circuit's "reasonably related" test articulated in *Sydnor v. Fairfax County*, 681 F.3d 591, 594-95 (4th Cir. 2012). Under that test, a federal complaint may include allegations that are reasonably related to the administrative charge, meaning allegations that add background or contextual detail to the same legal theory of recovery, so long as the basic facts regarding the protected activity,

retaliation, and causation remain consistent. *Id.* A plaintiff violates the exhaustion principle only if she introduces materially different protected disclosures, materially different theories of retaliation, or materially different time frames, actors, and conduct. *Id.*

In *Lancaster*, this Court applied that standard and found that the plaintiff's federal complaint, though more detailed than the administrative charge, was properly within the scope of exhaustion. The Court noted: "The court finds [the OIG report] particularly instructive. Indeed, the allegations and other findings discussed in the report are not only 'expected to follow' from a reasonable investigation, but *actually* followed from that investigation." *Lancaster*, 2024 WL 1977175, at *4 (emphasis in original). The Court reasoned that "including the additional background information about what Lancaster discussed with OIG investigators does not expand his claims beyond what he exhausted," adding: "[n]early all of the allegedly objectionable paragraphs fall in that category and either provide background for, or additional detail about, the claim Lancaster exhausted." *Id*. at *6-7.

The same analysis applies here. Dr. Olech's federal complaint is not a wholesale expansion of her administrative claim; it is a more detailed elaboration of the same core allegation—that she reported facility wrongdoing and misconduct, and that MSA was aware of and retaliated against her for those reports. The specific dates, specific individuals involved, specific documents at issue, and specific sequence of events that Dr. Olech describes in her federal complaint are all 'background information' and 'additional detail' about the retaliation claim she presented to the OIG. These elaborations do not introduce new theories, new protected disclosures, or materially different actors and time frames; they simply flesh out the skeleton of the administrative charge with the kind of factual specificity that a federal complaint should contain.

*Iovino* provides further support. In *Iovino*, this Court upheld the plaintiff's complaint against a scope-of-exhaustion challenge, permitting “contextualizing factual allegations” while striking only those allegations that “attempted to expand the plaintiff's theories of recovery.” *Iovino*, 600 F. Supp. 3d at 622–25; *Lancaster* at *6. The Court’s analysis recognized that where the dispute targets particular allegations rather than the existence of the core federal claim itself, the appropriate remedy is narrowing, not dismissal. *See Iovino* at 618. That reasoning is directly applicable here. Olech's complaint targets the same core federal claim; any scope questions are collateral.

*Chacko v. Patuxent Inst.*, 429 F.3d 505 (4th Cir. 2005), upon which MSA may rely, is distinguishable. In *Chacko*, the plaintiff had exhausted a claim of wrongful termination on one ground and then attempted to proceed in federal court on an entirely different ground—a shift in legal theory, actors, and time frame. *Id*. at 506. That is not what Olech has done. She exhausted a retaliation claim and is proceeding on that same claim  here in more detailed form.

For these reasons, MSA's scope-of-exhaustion argument fails. The complaint may be subject to narrowing through discovery or at summary judgment if particular allegations fall outside the bounds of what Olech exhausted, but wholesale dismissal is not warranted. This Court has already applied the reasonably-related framework expansively in *Lancaster* and *Iovino*, and similarly here, the OIG Report addresses the subjects elaborated in the federal complaint—the specific dates, the document handling, the timeline of leave and termination—and thus the Lancaster framework applies directly, and the Court's prior findings in similar situations that such allegations are 'particularly instructive' and 'reasonably related' support denying MSA's motion.

**F. <u>The Requested Remedies Are Available Under § 4712</u>**

MSA challenges certain of the remedies Olech seeks, arguing that some are not available under § 4712. This argument, even if successful as to particular remedies, does not warrant dismissal of the action. Dismissal is the appropriate sanction only when a complaint fails to state a claim for relief; disagreement over the availability of specific remedies is a merits question to be resolved after the pleading stage.

Moreover, § 4712 provides explicitly for "compensatory damages and other relief available under this section" in *de novo* district court proceedings. 41 U.S.C. § 4712(c)(2). The scope of recoverable relief should be assessed from § 4712(c)(1) and (c)(2), which authorize remedies including reinstatement, back pay, compensatory damages, and attorney's fees. Even if the Court concludes that some requested remedies exceed § 4712's express scope, that issue would not defeat Olech's otherwise plausible retaliation claim.

Under the statute, Olech is entitled to seek: (1) Compensatory damages for lost wages, benefits, and other pecuniary losses flowing from the wrongful termination (§ 4712(c)(1)(B)); (2) Attorney's fees and costs (§ 4712(c)(1)(C)); and (3) Injunctive relief, including prospective relief ensuring that MSA does not retaliate further (§ 4712(c)(4)).

The plain language of § 4712 affords these remedies. Even if this Court concludes that one or more of Olech's specific remedy requests—such as a neutral reference letter or posting of statutory notice—falls outside the statute's scope, the proper course is not to dismiss the action but to address remedies at a later stage or to tailor relief at judgment. *See Nahum v. Boeing Co.*, No. 2:19-cv-1114-BJR, 2019 WL 6878242, at *5 (W.D. Wash. Dec. 17, 2019) (striking particular remedy requests without dismissing the action)—a case MSA itself cites. The availability of remedies does not depend on the viability of every possible remedy. The action should not be

dismissed on the grounds the court may determine some remedies are not available when the Complainant has clear entitlement to very extensive damages.

## V. CONCLUSION

For the reasons stated above, Defendant MSA's Motion to Dismiss should be denied. Dr. Olech's complaint alleges under 41 U.S.C. § 4712: that she made protected disclosures regarding facility misconduct, that MSA was aware of those disclosures, that MSA terminated her employment, and that her protected activity was a contributing factor in that termination. Those allegations satisfy the pleading standard of Federal Rule of Civil Procedure 8, as informed by the low contributing-factor causation standard Congress enacted.

MSA's motion rests on three fundamental errors. First, it conflates the employer's affirmative same-action defense—which MSA must prove by clear and convincing evidence after the plaintiff establishes a *prima facie* case—with the plaintiff's pleading burden. Second, it attempts to apply a but-for causation standard that the Supreme Court has explicitly rejected because contributing-factor causation applies. Third, it treats the OIG's administrative findings as dispositive in what the statute mandates to be a *de novo* proceeding, contrary to both statutory language and controlling precedent.

This Court has already rejected nearly identical arguments in *Lancaster* and *Iovino*, two prior cases involving this same Defendant raising these same issues (and Defendant is well -aware these arguments were found to not have merit). The complaint states a claim; MSA's affirmative defenses and factual disputes do not override or replace Complainant's allegations. If the Court identifies particular allegations that exceed the scope of exhaustion, the remedy is to address those specific allegations through focused briefing or at the appropriate procedural stage, not to dismiss the entire action.

For these reasons, the Court should deny MSA's Motion to Dismiss in its entirety.

Respectfully submitted,

Date: April 7, 2026

*/s/ Joshua Erlich*
Joshua Erlich (VA Bar No. 81298)
The Erlich Law Office, PLLC
1550 Wilson Blvd, Ste. 700
Arlington, VA 22209
(703)791-9087

Stephani L. Ayers (pending admission application via *pro hac vice*)
Government Accountability Project
POB 1061
Medford, OR 97501
stephania@whistleblower.org
(813) 382-7865 (mobile)

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on this day, I electronically filed the foregoing PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS with the Clerk of the Court using the CM/ECF system, which will send notice of electronic filing to all counsel of record in this action.

Date: April 7, 2026