# Exhibit 2

United States Department of State

Washington, D.C. 20520

UNCLASSIFIED June 25, 2024

Via E-Mail

Stephani Ayers
stephani@whistleblowerdefenders.com
Counsel for Complainant

Ryan Berry
ryan@wardberry.com
Counsel for MSA Security

Re: OIG Whistleblower Case 2023-0136 (Dr. Carolyn Olech)
Agency Decision and Order Pursuant to 41 U.S.C. § 4712

Dear Ms. Ayers and Mr. Berry,

This letter is directed to you in order to present to you the decision and Order of the Department of State (DOS) pertaining to the DOS's Office of Inspector General's (OIG) Report of Investigation for Whistleblower Case 2023-0136.

The OIG Report of Investigation, dated January 2, 2024, has been referred by the Secretary to the Office of the Procurement Executive (OPE) for decision pursuant to 41 U.S.C. § 4712. Upon consideration of the OIG's Report of Investigation, as well as the information in the administrative record, it has been determined by the Procurement Executive's designee, the Director of the Office of Acquisition Policy, as the deciding official in this case, that no legally sufficient basis has been established to conclude that the complainant, Dr. Carolyn Olech, was subjected to a reprisal prohibited by 41 U.S.C. § 4712(a) by her former employer, Michael Stapleton Associates (MSA).

## PROCEDURAL SUMMARY

On February 2, 2023, Dr. Olech submitted a whistleblower reprisal complaint through the OIG hotline, pursuant to 41 U.S.C. § 4712, alleging that MSA placed her on paid administrative leave and subsequently terminated her employment as reprisal for reporting to MSA management and others that a Veterinary Technician (Vet Tech) employed by MSA was routinely tardy or absent from work and that on several occasions smelled of alcohol and appeared to be inebriated. This complaint was docketed by the OIG as OIG Whistleblower Complaint 2023-0136. As required by 41 U.S.C. § 4712(b), the OIG investigated the reprisal allegation and issued its Report of Investigation (OIG Report) dated January 2, 2024.

On January 23, 2024, OPE provided Dr. Olech's counsel (hereafter Dr. Olech) and MSA's counsel (hereafter MSA) a copy of OIG's record of investigation. OPE invited both parties to supplement the administrative record. On February 23, 2024, MSA made a timely submission. On March 18, 2024, after having received two extensions, Dr. Olech declined to supplement the record. Subsequently, Dr. Olech was provided the opportunity to submit a rebuttal to MSA's supplemental submission, and after having received an extension, Dr. Olech declined to submit a rebuttal.

## THE ADMINISTRATIVE RECORD

For purposes of DOS's decision and Order in this matter, the following documents, and only those documents, have been reviewed and considered:

1. The OIG Report of Investigation dated January 2, 2024 – which was provided to both parties.
2. The OIG's Investigative File consisting of eight .pdfs titled: Complaint; Interviews; Docs from Olech; MSA Docs May 2023; MSA Docs June 2023; MSA Docs Aug 2023; MSA Docs Oct 2023; and MSA Docs Nov 2023 – which were provided to both parties.
3. Supplemental submission provided by MSA consisting of a 1-page letter to OPE; a 5-page legal memorandum with a 20-page attachment; and a copy of MSA's 81-page contract with DOS – which was provided to Dr. Olech.

FINDINGS OF FACT

1. On June 6, 2016, Dr. Olech began working as a full-time veterinarian with MSA on its government contract at the DOS Diplomatic Security Canine Validation Center (CVC) in Winchester, VA.[1]

2. From mid-2016 through the end of 2018, Dr. Olech raised concerns to her supervisor at MSA about the Vet Tech's tardiness and absences. She also reported to her supervisor and to the former Program Manager, and the Deputy Program Manager (DPM) that she and other MSA staff believed that, at times, the Vet Tech consumed alcohol prior to arriving to work and was intoxicated while at work.

3. On June 21, 2017, MSA counseled the Vet Tech about her tardiness and absenteeism and on May 15, 2018, MSA counseled the Vet Tech about her alleged alcohol use.

4. In June and August 2018, Dr. Olech also met with OIG employees during a review of the Department's canine program. During those meetings, she told OIG employees about the Vet Tech's abuse of alcohol and mistreatment of canines, among other issues.

5. In early 2019, DHP investigated the Vet Tech's misconduct regarding alcohol abuse. Dr. Olech was interviewed and provided evidence during this investigation. The Vet Tech admitted to consuming alcohol to the extent that she was unable to practice veterinary medicine with reasonable skill and safety. In 2020, following the DHP investigation, the Vet Tech indefinitely lost her license to practice as a veterinary technician in Virginia. MSA confirmed that even though the Vet Tech no longer had a license, she was still employed with MSA and working at the CVC in an administrative position.

6. On August 6, 2021, a canine in MSA's training program latched onto the arm of a trainer. MSA employees had to physically separate the canine and the trainer. During the incident, MSA employees gave the canine

[1] The CVC's name changed several times over the years.

tranquilizers to subdue him, but were unable to resuscitate the canine. The Vet Tech was involved in the attempt to resuscitate the canine.

7. On February 7, 2022, MSA employees at the CVC received a letter from the Virginia Department of Health Professions (DHP) inquiring about the death of a DOS canine at the CVC on August 6, 2021 (the K-9 incident). Attached to the letter were veterinary records (Encounter Notes)[2] there were generated in MSA's ClioPro Internal record-keeping system.

8. After MSA's receipt of the DHP letter, MSA conducted a forensic review of the ClioPro system and noted that on January 12, 2022, Dr. Olech had accessed records of the K-9 incident and downloaded sixteen different files related to the K-9 incident which included Encounter Notes.

9. MSA also conducted a forensic review of Dr. Olech's email account and found that her internet browser history was deleted on January 13, 2022; and that all email records in her CVC email account between December 14, 2021 and February 3, 2022 had also been deleted; and the "sent" and "deleted" items dated before February 2022 had additionally been deleted.

10. On February 24, 2022, based on the findings of MSA's forensic review, Dr. Olech was placed on paid administrative leave pending further investigation.

11. On July 8, 2022, outside counsel for MSA interviewed Dr. Olech and she admitted to repeatedly emailing DOS documents, including canine records and K-9 incident reports, to her personal email address. Outside counsel directed Dr. Olech to return all DOS documents in her possession by July 13, 2022.

12. On July 15, 2022, after Dr. Olech made no attempts to return any DOS documents, Dr. Olech's supervisor recommended to MSA's Chief Human Resources Officer that MSA terminate Dr. Olech's contract.

[2] Encounter Notes are medical records and are considered DOS documents pursuant to MSA's contract with the DOS.

13. On July 19, 2022, MSA terminated Dr. Olech's employment for violation of company policies.

BURDENS OF PROOF

Authority for the conduct of this proceeding is provided under 41 U.S.C. § 4712. This statute prohibits reprisals by a Government contractor against an employee for making protected disclosures. Specifically, 41 U.S.C. § 4712(a)(1) as amended provides that:

> An employee of a contractor, subcontractor, grantee, or subgrantee or personal services contractor may not be discharged, demoted, or otherwise discriminated against as a reprisal for disclosing to a person or body described in paragraph (2) information that the employee reasonably believes is evidence of gross mismanagement of a Federal contract or grant, a gross waste of Federal funds, an abuse of authority relating to a Federal contract or grant, a substantial and specific danger to public health or safety, or a violation of law, rule, or regulation related to a Federal contract (including the competition for or negotiation of a contract) or grant.

COMPLAINANT'S BURDEN

Under the requirements of the statute, the initial issue is whether Dr. Olech made a protected disclosure. The OIG Report (at pgs. 5-7) recites the statutory and legal standards and concludes that Dr. Olech demonstrated by a preponderance of the evidence that she made protected whistleblower disclosures when she raised concerns about the Vet Tech's use of alcohol to MSA management and to OIG from mid-2016 to 2018. Dr. Olech also asserted to the OIG that she made protected disclosures to DHP in its investigation of the incident, although she denied that she provided MSA documents to DHP.

In its supplemental submission (at pgs. 2-5 of its Legal Memorandum), MSA argued that Dr. Olech's disclosure to DHP is not protected under 41 U.S.C. § 4712 because state boards and state agencies are not included among the seven covered persons or bodies to whom an employee of a contractor may disclose information that the employee believes is evidence of misconduct as defined in

41 U.S.C. § 4172(a)(1). However, the record shows that Dr. Olech also disclosed her concerns about the Vet Tech's alcohol use to her MSA supervisor and to the OIG. Therefore, we conclude that Dr. Oleck made protected disclosures.

The next issue is whether Dr. Olech's disclosures meet the statutory guidelines. The OIG notes in the OIG Report (at pg. 7, footnote 28) the Dr. Olech's disclosures related to the Vet Tech tardiness and absenteeism do not fit the categories of disclosure as outlined in section 4712. However, the OIG determined (at pg. 7 of the OIG Report) that Dr. Olech's disclosure that the Vet Tech abused alcohol was a violation of a law, rule, or regulation related to the contract because Dr. Olech reasonably believed that this action was improper and that it was subjectively and objectively reasonable.

In its supplemental submission (on pg. 19 of its Legal Memorandum), MSA argued that Dr. Olech's disclosure, without more, does not fall within the description of 41 U.S.C. § 4712(a)(1). MSA failed to quantify this comment. Therefore, we agree with the OIG's conclusion that in these circumstances Dr. Olech's disclosure related to the Vet Tech's alcohol abuse is accepted.

The final burden for the complainant is to demonstrate that the protected disclosure was a contributing factor in the personnel action. The OIG Report (at pgs. 7-8) notes that the OIG could not establish that a protected disclosure was a contributing factor in the adverse personnel actions by either direct or circumstantial evidence because the personnel action occurred outside the period of time that a reasonable person could conclude that the disclosures to MSA and OIG, which occurred from mid-2016 to 2018, were a contributing factor in the 2022 personnel action. However, the OIG then factored in Dr. Olech's disclosure to DHP which the OIG asserts is a law enforcement agency under the statue. The OIG then shifted the burden to MSA to prove that its actions were not taken in reprisal the protected disclosure.

EMPLOYER'S BURDEN

The OIG concluded in their report (at pgs. 9-10) that MSA provided clear and convincing evidence that it would have taken the same adverse actions against the employee regardless of the protected disclosure.

As noted above, in its supplemental submission, MSA disagreed with the OIG regarding classification of DHP as protected under the statute but agreed that MSA provided clear and convincing evidence that it would have taken the same personnel actions against Dr. Olech in the absence of a protected disclosure. Therefore, since Dr. Olech failed to rebut MSA's evidence pertaining to her administrative leave and subsequent employment termination resulting from the improper removal and failure to return DOS documents, the OIG's and MSA's conclusion and arguments that MSA provided clear and convincing evidence that it would have taken the same personnel actions against Dr. Olech in the absence of a protected disclosure is accepted.

DECISION

Taking into consideration the entirety of the factual information included in the administrative record, I find that MSA did not subject Dr. Olech to improper reprisal in violation of 41 U.S.C. § 4712, which are supported by investigation and findings.

Based on the foregoing, I hereby issue an Order in this proceeding denying relief to the Complainant in this administrative proceeding. Dr. Olech may bring an action de novo against MSA in accordance with 41 U.S.C. § 4712(c)(2) in a United States District Court within two years of receipt of this Order.

Sincerely,

Sharon D. James
Division Director, Office of the Procurement Executive, Strategic Communications & Policy Division