**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF VIRGINIA**
**HARRISONBURG DIVISION**

| | |
|---|---|
| **CAROLYN OLECH,**<br><br>***Plaintiff,***<br><br>**v.**<br><br>**MICHAEL STAPLETON ASSOCIATES, LTD. d.b.a. MSA SECURITY, INC.,**<br><br>***Defendant.*** | **Case No. 5:25-cv-00152**<br><br>**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION FOR A CONFIDENTIALITY ORDER UNDER FEDERAL RULE OF CIVIL PROCEDURE 26(c)** |

Date: October 7, 2026

Respectfully submitted,

/s/Paxton R. L. Ouellette
Daniel S. Ward (VSB 45978)
Paxton R. L. Ouellette (VSB 101680)
WARD & BRADEL, PLLC
1751 Pinnacle Drive, Suite 900
Tysons, VA 22102
(202) 331-8160
(202) 505-7100 Fax
dan@wardbradel.com
pouellette@wardbradel.com
*Attorneys for Defendant Michael Stapleton Associates, Ltd., d/b/a MSA Security, Inc.*

Defendant Michael Stapleton Associates, Ltd., d/b/a MSA Security, Inc. ("MSA"), by counsel, respectfully submits this memorandum in support of its Motion for a Confidentiality Order Under Fed. R. Civ. P. 26(c).

## I. Introduction

On April 24, 2026, counsel for the MSA and Olech ("Plaintiff" or "Olech," together with MSA, the "Parties") met to discuss their Joint Rule 26(f) Report and Discovery Plan. In the finalized submission, they represented that they "are working to agree to an order regarding claims of privilege or of protection as to trial preparation material asserted after production," and further agreed that "[t]he parties will either submit a joint stipulated protective order, or Defendant will submit its proposal and Plaintiff will submit his [*sic*] response." ECF No. 14.

Consistent with that agreement, on May 26, 2026, MSA sent Plaintiff a proposed protective order, explaining that it was "the same form as that used in *Iovino* and *Lancaster*." Ex. 1 (May 26-Sept. 23, 2026 email thread between D. Ward, P. Ouellette, S. Ayers, J. Erlich, et al.). Plaintiff did not respond. Plaintiff subsequently served discovery requests on MSA on July 10, 2026. MSA followed up regarding the status of the proposed Protective Order on July 13 and again on July 22, 2026, explaining that MSA "cannot respond to your discovery requests without having a protective order in place." *Id.* Plaintiff did not respond to either inquiry. *Id.* On August 10, 2026, MSA served its discovery responses, expressly noting that it would produce responsive documents "pursuant to the terms of an agreed upon Protective Order."

On September 11, 2026, an attorney with the Government Accountability Project, who has not entered an appearance in this action, sent MSA a meet-and-confer letter concerning MSA's discovery responses. Ex. 2 (Sept. 11, 2026 email from M. Fichtel to D. Ward and P. Ouellette). MSA and Plaintiff's representatives met on September 23, 2026. No counsel of record appeared

on Plaintiff's behalf. Instead, the same Government Accountability Project attorney who had sent the meet-and-confer letter attended with a paralegal. During that meet and confer conference, MSA again raised the outstanding proposed Protective Order and explained that it was the same form of protective order that had been extensively litigated (by the same law firms involved in this lawsuit) and ultimately entered in *Iovino* and *Lancaster*. The history of those protective order proceedings includes:

*Iovino v. Michael Stapleton Associates, Ltd.*, No. 5:21-CV-00064

- ECF No. 64: [Proposed] Confidentiality Agreement and Order;
- ECF No. 65: Plaintiff's Opposition to Motion for Protective Order and Objections to Proposed Order Provisions;
- ECF No. 66: Oral Order Granting Motion for Protective Order;
- ECF No. 67: Confidentiality Order;
- ECF No. 68: Plaintiff's Motion for Entry of a Rule 72(a) Written Order;
- ECF No. 69: Defendant's Response in Opposition to Plaintiff's Motion for Entry of a Rule 72(a) Written Order;
- ECF No. 70: Plaintiff's Reply to Defendant's Opposition to Motion for Entry of a Rule 72(a) Written Order;
- ECF No. 71: Plaintiff's Rule 72(a) Objections to Magistrate Protective Orders;
- ECF No. 80: Oral Order on Plaintiff's Motion for Entry of a Rule 72(a) Written Order;
- ECF No. 81: Joint Statement Regarding Discovery Dispute;
- ECF No. 85: Defendant's Response Per Oral Order (ECF 80);
- ECF No. 87: Plaintiff's Reply Re: Motion to Amend/Correct Protective Order;
- ECF No. 89: Plaintiff's Reply to MSA's Opposition to Motion to Compel Discovery;
- ECF No. 94: *Iovino*, No. 5:21-cv-00064, 2022 WL 17581491 (W.D. Va. Dec. 12, 2022);
- ECF No. 151: Defendant's Motion for Protective Order;
- ECF No. 157: Department of State ("DoS")'s Statement of Interest;
- ECF No. 162: Plaintiff's Opposition to Defendant's Motion for Protective Order;
- ECF No. 165: DoS's Reply in Support of Its Statement of Interest;
- ECF No. 166: Defendant's Reply in Support of Motion for Protective Order;
- ECF No. 172: Memorandum Opinion;
- ECF No. 174: Plaintiff's Corrected Rule 72(a) Objections;
- ECF No. 175: Defendant's Opposition to Plaintiff's Rule 72(a) Objections; and
- ECF No. 177: *Iovino*, No. 5:21-cv-00064, 2024 WL 3520170 (W.D. Va. July 24, 2024).

*Lancaster v. Michael Stapleton Associates, Ltd.*, No. 5:23-CV-00063-EKD

- ECF No. 28: Joint Statement Regarding Discovery Dispute;
- ECF No. 37: Oral Order on Joint Discovery Letter;

- ECF No. 38: Defendant's Motion for Protective Order;
- ECF No. 39: Plaintiff's Opposition to Defendant's Motion for Protective Order;
- ECF No. 40: Defendant's Reply in Support of Its Motion for Confidentiality Order;
- ECF No. 44: Oral Order Granting Motion for Protective Order; and
- ECF No. 45: Confidentiality Order.

Plaintiff's representatives stated that they would review the proposed Protective Order. On September 30, 2026—more than four months after MSA first provided the proposed Protective Order—Plaintiff informed MSA that "Plaintiff does not presently agree that such an agreement is warranted." Ex. 3 (Sept. 30, 2026 email from M. Fichtel to D. Ward and P. Ouellette).

## I. Governing Standard

Federal Rule of Civil Procedure 26(c)(1) authorizes the Court, for good cause, to "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." "The party seeking a protective order has the burden of establishing good cause by demonstrating that specific prejudice or harm will result if no protective order is granted." *Iovino v. Michael Stapleton Assocs., Ltd.*, No. 5:21-CV-00064, 2022 WL 17581491, at *4 (W.D. Va. Dec. 12, 2022) (quoting cases). Further, an umbrella protective order is appropriate in cases involving "highly sensitive or proprietary information" or voluminous discovery because they expedite production, reduce expense, and avoid document-by-document adjudication of confidentiality before production. *Id.* at *5. In those circumstances, the protective is not merely permissible, but "advisable." *Id.*

## II. Argument

### a. Good Cause Exists for Entry of MSA's Proposed Protective Order.

Good cause exists for entry of the proposed Protective Order. Plaintiff has propounded discovery that requires MSA to produce documents containing sensitive and confidential information, including information concerning non-party MSA employees, internal business operations, and MSA's performance of its government contracts. MSA does not seek to withhold otherwise discoverable information on the ground that it is confidential. On the contrary, MSA seeks a protective order so that relevant information

can be produced while preserving appropriate restrictions on its dissemination and use outside this litigation. A protective order therefore facilitates, rather than impedes, discovery.

The need for these protections is particularly significant with respect to materials arising from MSA's work for the DoS, which is central to this litigation. MSA's contract with DoS provides that program-related materials are confidential and the property of the Government. *Iovino*, 2022 WL 17581491, at *4 ("MSA's contract with the State Department (the 'Contract') defines State Department materials as '[a]ll documents and records generated during the performance of work under this contract.'"). MSA cannot disregard its contractual obligations concerning those documents merely because they are responsive to civil discovery. Producing such materials without restrictions on their further dissemination would place MSA in the untenable position of complying with its discovery obligations while also compromising the confidentiality obligations imposed by its government contract. This very issue was addressed, litigated, and decided by the *Iovino* Court. *Id.* ("MSA would undoubtedly be in breach of its contractual obligations with the State Department if it disclosed materials to Iovino without a confidential designation.").

DoS also has an independent interest in controlling the dissemination of its information. Discovery of DoS materials is subject to the agency's *Touhy* process, through which DoS determines whether and under what circumstances Government information may be disclosed for use in this litigation. *See* 22 C.F.R. Part 172. That review would provide little protection against subsequent dissemination if materials produced in this litigation could thereafter be disclosed without restriction. The proposed Protective Order provides an additional safeguard against further dissemination of DoS materials authorized for use in this litigation.

The proposed Protective Order also protects sensitive information concerning non-parties. At the meet-and-confer, MSA agreed to produce responsive documents containing such information subject to the entry of a Protective Order. The affected individuals have legitimate privacy interests in their personnel and other sensitive information, which Plaintiff can obtain and use in this litigation without permitting its unrestricted dissemination.

Finally, MSA's request is narrowly tailored. MSA does not seek a blanket prohibition on disclosure or an order permitting it to unilaterally withhold relevant evidence. MSA seeks reasonable restrictions governing the treatment and use of materials appropriately designated as confidential. Indeed, the proposed Protective Order is the same form of order used in the related *Iovino* and *Lancaster* matters, where substantially similar discovery concerning MSA, its employees, and its government-contract operations were at issue. The requested protections are neither novel nor unduly restrictive.

**b. MSA Made Repeated Efforts to Resolve the Issue Without Court Intervention.**

The history of the Parties' discussions further supports entry of the proposed Protective Order. From the outset of discovery, the Parties contemplated the need to address protections applicable to materials produced in this litigation. In their Joint Rule 26(f) Report and Discovery Plan, the Parties stated that they were "working to agree to an order regarding claims of privilege or of protection as to trial preparation material asserted after production" and agreed that they would either submit a stipulated order or that MSA would submit a proposal to which Plaintiff could respond. ECF No. 14.

Consistent with that framework, MSA repeatedly sought Plaintiff's agreement to and input regarding the proposed Protective Order. From May through September, MSA raised the issue multiple times—including after Plaintiff served discovery, in MSA's discovery responses, and again at the Parties' September 23 meet-and-confer. Plaintiff never responded. At the September 23 meet-and-confer, Plaintiff's representatives (for the first time) stated that they would review the proposal. Then, on September 30—more than four months after MSA first provided the proposed order—Plaintiff stated that she "does not presently agree that such an agreement is warranted." Ex. 3. Notably, Plaintiff did not say she would be prejudiced by the entry of a protective order. Instead, she merely disagreed.

**c. Plaintiff Will Suffer No Prejudice from Entry of the Proposed Protective Order.**

Entry of the proposed Protective Order will not restrict Plaintiff's access to relevant discovery or impair her ability to prosecute this action. It will simply govern the manner in which appropriately designated confidential information may be used and disclosed. Plaintiff remains free to challenge any

confidentiality designation she believes is improper, and the Protective Order does not alter the standards governing discoverability or admissibility. The Protective Order did not impact proceedings in *Iovino*. There were no allegations in *Iovino* that Defendant abused the protections afforded by the protective order or over-designated. *Iovino* settled on the eve of trial after Summary Judgment briefing had concluded.

Conversely, requiring MSA to produce sensitive information without any mechanism for protecting it would create precisely the risk that Rule 26(c) is designed to address. Once confidential personnel, commercial, government, or other sensitive information has been disseminated beyond the litigation, that disclosure cannot meaningfully be undone. That concern is particularly significant for DoS materials, and the lack of a protective order in this matter would likely create greater *Touhy* delays, as the Department of State would have to alter its risk calculus to consider the fact that all documents approved for use in this lawsuit will have no additional protections from further dissemination—something a protective order would provide. The proposed Protective Order mitigates these risks without depriving Plaintiff of relevant discovery.

MSA has demonstrated a concrete need to protect confidential information. Plaintiff cannot identify any undue prejudice she would suffer if the requested Protective Order were issues. The balance weighs decisively in favor of entry of the proposed Protective Order.

## III. Conclusion

The discovery sought by Plaintiff encompasses sensitive DoS materials generated through MSA's performance of a federal government contract. MSA is subject to contractual restrictions concerning government information. The U.S. Department of State has an independent interest in controlling dissemination of its materials. Finally, Plaintiff has sought confidential personnel, employment, and commercial information.

This Court previously addressed this issue in *Iovino* and found good cause for a confidentiality order protecting DoS information arising from MSA's DoS contracts. A virtually identical protective order was entered in *Iovino* as a result. And the same law firms agreed to yet another virtually identical protective order in *Lancaster*. The same considerations are present here. A narrowly drawn protective order would

facilitate, rather than obstruct, discovery by allowing the parties to exchange sensitive information subject to defined protections, preserving challenges to individual confidentiality designations, and leaving any later sealing determination to the Court under the governing public-access standards.

Date: October 7, 2026

Respectfully submitted,

/s/ Paxton R. L. Ouellette
Daniel S. Ward (VSB 45978)
Paxton R. L. Ouellette (VSB 101680)
WARD & BRADEL, PLLC
1751 Pinnacle Drive, Suite 900
Tysons, VA 22102
(202) 331-8160
(202) 505-7100 Fax
dan@wardbradel.com
pouellette@wardbradel.com
*Attorneys for Defendant Michael Stapleton Associates, Ltd., d/b/a MSA Security, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 7, 2026, I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the Western District of Virginia by using the CM/ECF system. I certify that the following participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Joshua Erlich
The Erlich Law Office
1550 Wilson Blvd #700
Arlington, VA 22209
(703) 791-9087
jerlich@erlichlawoffice.com

Stephani L. Ayers
GOVERNMENT ACCOUNTABILITY PROJECT
1612 K St. NW, Suite 1100
Washington, DC 20006
(813) 382-7865
stephani@whistleblowerdefenders.com

/s/ Paxton R. L. Ouellette
Paxton R. L. Ouellette