**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF VIRGINIA**
**HARRISONBURG DIVISION**

**CAROLYN OLECH,**

***Plaintiff,***

**v.**

**MICHAEL STAPLETON ASSOCIATES, LTD. d.b.a. MSA SECURITY, INC.,**

***Defendant.***

**Case No. 5:25-cv-00152**

**DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION FOR A CONFIDENTIALITY ORDER UNDER FEDERAL RULE OF CIVIL PROCEDURE 26(c)**

Daniel S. Ward (VSB 45978)
Paxton R. L. Ouellette (VSB 101680)
WARD & BRADEL, PLLC
1751 Pinnacle Drive, Suite 900
Tysons, VA 22102
(202) 331-8160
(202) 505-7100 Fax
dan@wardbradel.com
pouellette@wardbradel.com

*Attorneys for Defendant Michael Stapleton Associates, Ltd., d/b/a MSA Security, Inc.*

# TABLE OF CONTENTS

Table of Authorities ..... ii

I. Introduction ..... 1

II. Argument ..... 1

a. MSA Demonstrated Good Cause for a Confidentiality Order Under Federal Rule of Civil Procedure 26(c). ..... 1

b. The Proposed Order Neither Delegates Judicial Authority nor Improperly Invokes Governmental Privileges or Interests. ..... 4

c. The *Iovino* Depositions Do Not Establish That the Proposed Confidentiality Order Would Improperly Restrict Discovery. ..... 5

d. Plaintiff's Objections to the Confidentiality Order is About Trying to Create *Touhy* Precedent. ..... 7

e. The Order Does Not Improperly Restrict Whistleblower Activity or Prejudice Plaintiff. . 9

f. Plaintiff's Remaining Procedural Objections and Requests for Additional Relief Do Not Warrant Denial of the Motion. ..... 12

III. CONCLUSION ..... 15

# TABLE OF AUTHORITIES

**Cases**

*Buckley v. Valeo*,
424 U.S. 1 (1976) .......... 5

*Iovino v. Michael Stapleton Associates, Ltd.*,
No. 5:21-cv-00064, 2022 WL 17581491 (W.D. Va. Dec. 12, 2022) .......... 2, 3, 10, 11

*Iovino v. Michael Stapleton Associates, Ltd.*,
No. 5:21-CV 00064, 2024 WL 3520170 (W.D. Va. July 24, 2024) .......... 8

*Iovino v. Michael Stapleton Associates*, *Ltd.*
No. 5:21-CV-00064, 2024 WL 2412694 (W.D. Va. May 23, 2024) .......... 8

*Kingdomware Technologies., Inc. v. United States*,
579 U.S. 162, 136 S. Ct. 1969, 1975-1976, 195 L. Ed. 2d 334 (2016). .......... 14

*Kowalski v. Tesmer*,
543 U.S. 125 (2004) .......... 5

*Lux v. Judd*,
651 F.3d 396 (4th Cir. 2011) .......... 14

*McCook Metals LLC v. Alcoa, Inc.*,
249 F.3d 330 (4th Cir. 2001) .......... 15

*Menocal v. GEO Group, Inc.*,
Civil Action No. 14-cv-02887-JLK, 2017 WL 4334000 (D. Colo. June 6, 2017) .......... 8

*Mohawk Industries, Inc. v. Carpenter*,
558 U.S. 100, 130 S. Ct. 599, 175 L. Ed. 2d 458 (2009) .......... 15

*Nicholas v. Wyndham International, Inc.*,
373 F.3d 537 (4th Cir. 2004) .......... 15

*Norris v. Excel Industries, Inc.*,
No. 5:14-CV-00029, 2015 WL 4431022 (W.D. Va. July 20, 2015) .......... 2

*Parkway Gallery Furniture, Inc. v. Kittinger/Pennsylvania House Group, Inc.*,
121 F.R.D. 264 (M.D.N.C. 1988) .......... 4

*Phillips v. General Motors Corp.*,
307 F.3d 1206 (9th Cir.2002) .......... 4

*Seattle Times Co. v. Rhinehart*,

467 U.S. 20 (1984) ........ 10

*Spencer v. Kemna*,
523 U.S. 1, 118 S. Ct. 978, 140 L. Ed. 2d 43 (1998) ........ 14

*U.S. ex rel. Davis v. Prince*,
753 F. Supp. 2d 561 (E.D. Va. 2010) ........ 4

*United States v. Reynolds*,
345 U.S. 1 (1953) ........ 4, 5

*Will v. Hallock*,
546 U.S. 345, 126 S.Ct. 952, 163 L.Ed.2d 836 (2006) ........ 15

*Williams v. Ozmint*,
716 F.3d 801 (4th Cir. 2013) ........ 14

**Statutes**

28 U.S.C. § 1292(b) ........ 13, 14

41 U.S.C. § 4712 ........ 9, 10

**Other Authorities**

15B C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure § 3914.23, at 123 (2d ed.1992) ........ 15

FED. R. CIV. P. 26(c)(1) Advisory Committee's Note to 1970 Amendment ........ 12

Restatement (Third) of the Law Governing Lawyers § 125 (2000) ........ 9

**Rules**

Federal Rule of Civil Procedure 26(c) ........ 12

Va. Sup. Ct. R. PT 6 § 2 RPC 1.2 ........ 9

**Regulations**

22 C.F.R. §172.8(7) ........ 12

## I. INTRODUCTION

Dr. Olech's ("Plaintiff") opposition asks the Court to reject a narrow, customary confidentiality order—one that was entered in substantially identical form in *Lancaster v. Michael Stapleton Associates, Ltd.*[1] and *Iovino v. Michael Stapleton Associates, Ltd.*[2] Although Plaintiff's Opposition raises numerous objections, none establishes that the confidentiality protections Michael Stapleton Associates, Ltd. ("MSA") seeks are unwarranted under Rule 26(c).

This case concerns the same employer, the same Department of State ("DoS") facility, the same *Touhy* considerations, and the same DoS programs as those at issue in *Lancaster* and *Iovino*. The same law firm that represents Mr. Lancaster and represented Dr. Iovino is now arguing in this action (representing Dr. Olech here), for a ***third*** time, that a confidentiality order is unnecessary. This Court recognized the need for such an order in *Iovino* and *Lancaster.*[3] Plaintiff offers no persuasive reason to depart from that precedent. Instead, she (or her public interest lawyers) appear to be looking for a third bite at the apple. Plaintiff's Opposition is nothing more than an attempt to relitigate settled principles concerning confidentiality protections and the DoS *Touhy* process while raising constitutional arguments that do not bear on the limited relief MSA seeks. For these reasons, and as discussed below, MSA's Motion should be granted.

## II. ARGUMENT

### a. MSA Demonstrated Good Cause for a Confidentiality Order Under Federal Rule of Civil Procedure 26(c).

Plaintiff's central contention is that MSA has failed to establish good cause under Federal Rule of Civil Procedure ("Rule") 26(c). Plaintiff's lawyers tried this argument in *Iovino.*[4] It failed

---

[1] Case No. 5:21-cv-00064-TTH-JCH.
[2] Case No. 5:23-cv-00063-EKD.
[3] *See* ECF No. 29-1 at 3-4 for a summary of the *Iovino* and *Lancaster* litigation on this issue.
[4] *Iovino*, Case No. 5:21-cv-00064-TTH-JCH, ECF No. 65 at 1-2 (stating that "adopting a version

then, and should fail now. Plaintiff's lawyers again tried this argument in *Lancaster*.[5] It failed then, and should fail now.

Plaintiff argues that this Court's prior confidentiality rulings in *Iovino* and *Lancaster* are readily distinguishable and should be discounted. Plaintiff is wrong. The *Iovino* and *Lancaster* decisions are relevant and instructive. *Olech* concerns the same defendant, the same workplace, the same *Touhy* considerations, and the same DoS programs as those at issue in *Iovino* and *Lancaster*.[6] In both *Iovino* and *Lancaster*, the Court found that MSA demonstrated good cause for substantially identical confidentiality protections based on the same underlying interests present here.

The *Iovino* Court recognized that an umbrella confidentiality order is "commonplace in cases involving the production of highly sensitive or proprietary information, or where discovery is expected to be voluminous."[7] Applying that principle, it found that MSA's contractual obligations to DoS, the sensitive nature of the underlying government program, and the potential harm associated with unrestricted disclosure of government information warranted the entry of

---

of MSA's proposed protective order" there must be "findings of justification"); *Iovino*, Case No. 5:21-cv-00064-TTH-JCH, ECF No. 71 at 5 ("Where as here a party has not even argued 'good cause' to the court regarding the Para. 2(a)(iii) umbrella protective order provision being disputed, simply adopting MSA's proposed order containing that provision could not meet the requirement of a 'good cause' finding.").

[5] *Lancaster*, Case No. 5:23-cv-00063-EKD, ECF No. 39 at 16-18 ("MSA's references to 'government property' or 'Department of State interests' do not inherently satisfy the good cause mandate.").

[6] *See* ECF No. 33-1 at ¶ 3 (stating "Dr. Iovino, Dr. Olech, and Mr. Lancaster each worked for MSA at the State Department's canine validation center (the 'CVC')"); *compare Lancaster v. Michael Stapleton Associates, Ltd.* No. 5:23-CV-00063-EKD, ECF No. 45 ¶ 2(a)(iii) (confidentiality order identifying Contract Nos. SAQMMA16D0106 and 19AQMM22D0110) *with* ECF No. ¶ 2(a)(iii) (confidentiality order identifying Contract Nos. SAQMMA16D0106 and 19AQMM22D0110).

[7] *Iovino v. Michael Stapleton Associates, Ltd.*, No. 5:21-cv-00064, 2022 WL 17581491, at *5 (W.D. Va. Dec. 12, 2022) (citing *Norris v. Excel Indus., Inc.*, No. 5:14-CV-00029, 2015 WL 4431022, at *2 (W.D. Va. July 20, 2015)).

such an order.[8] Without it, "MSA would undoubtedly be in breach of its contractual obligations with the State Department if it disclosed materials … without a confidential designation."[9] The *Iovino* Court entered a confidentiality order containing substantially similar protections to the proposed order in this case.[10]

Nearly three years later, the Court found good cause to enter a confidentiality order in *Lancaster*, over Mr. Lancaster's opposition.[11] That order covered an additional DoS contract that is also at issue in *Olech* and is ***identical*** to the proposed order in this case, apart from ministerial changes.[12]

Plaintiff attempts to distinguish these decisions by emphasizing that MSA has not submitted the same evidence as in *Iovino* and *Lancaster*. But the absence of identical supporting materials does not render this Court's prior findings irrelevant or negate the confidentiality interests arising from MSA's contractual relationship with DoS, which remains unchanged. *Iovino* and *Lancaster* are particularly significant and persuasive given the sensitive nature of MSA's work, which involves "training [Explosion Detection Canines] for the State Department for a variety of applications, including anti-terrorism initiatives and embassy-security protocols."[13] Plaintiff's Opposition identifies no material differences in the underlying confidentiality interests

[8] *Id.* at *4.
[9] *Id.*
[10] *See Lancaster*, Case No. 5:21-cv-00064, ECF No. 67 (entered confidentiality order); *see also* **Ex. 1** (redline comparison of *Iovino* confidentiality order with the proposed *Olech* confidentiality order, showing the only changes were to the case caption, deletion of the word "Confidential" from Section 1, addition of the second DoS contract, substitution of the word "should" for "shall", substitution of the word "terms" for "treatment", formatting, date, district judge, and counsel of record).
[11] *Lancaster*, Case No. 5:23-cv-00063, ECF Nos. 39, 44-45 (W.D. Va. Sept. 3, 2025).
[12] *Lancaster*, Case No. 5:23-cv-00063-EKD, ECF No. 45 (entered confidentiality order); **Exhibit 2** (redline comparison of ECF No. 45 versus proposed *Olech v. MSA* confidentiality order, showing the only changes were to the case caption, formatting, date, district judge, and counsel of record).
[13] *Iovino,* 2022 WL 17581491, at *4.

that would warrant a different result.

Nor does the absence of any allegation that Plaintiff previously disclosed confidential information undermine the need for a confidentiality order. Rule 26(c) is preventative; it does not require MSA to wait for the improper disclosure of sensitive government information before seeking relief.[14] Requiring evidence of a prior disclosure would undermine Rule 26(c)'s purpose, particularly where the anticipated discovery implicates sensitive government operations and contractual confidentiality obligations.

**b. The Proposed Order Neither Delegates Judicial Authority nor Improperly Invokes Governmental Privileges or Interests.**

Plaintiff next advances an elaborate separation-of-powers argument premised on the mistaken assertion that MSA seeks to transfer the Court's authority over discovery to DoS. Plaintiff's lawyers tried this argument in *Iovino.*[15] It failed then, and should fail now. Plaintiff's lawyers again tried this argument in *Lancaster.*[16] It failed then, and should fail now. As written, the proposed order's express terms refute that assertion.

Paragraph 2(a)(iii) identifies government-designated confidential information as a category eligible for protection. It does not authorize DoS or MSA to determine the ultimate discoverability of particular materials, adjudicate discovery disputes, or override the Court's authority under Rule 26(c). To the contrary, Paragraph 14 expressly preserves the parties' right to challenge

---

[14] *See, e.g., Parkway Gallery Furniture, Inc. v. Kittinger/Pennsylvania House Grp., Inc.*, 121 F.R.D. 264, 268 (M.D.N.C. 1988) ("a party must make some threshold showing of good cause to believe that discovery ***will*** involve confidential or protected information") (emphasis added); *U.S. ex rel. Davis v. Prince*, 753 F. Supp. 2d 561, 565 (E.D. Va. 2010) ("The party seeking a protective order has the burden of establishing 'good cause' by demonstrating that 'specific prejudice or harm ***will*** result if no protective order is granted.'") (quoting *Phillips v. Gen. Motors Corp.,* 307 F.3d 1206, 1210–11 (9th Cir.2002)) (emphasis added).

[15] *Iovino*, Case No. 5:21-cv-00064-TTH-JCH, ECF No. 71 at 9 (quoting *United States v. Reynolds*, 345 U.S. 1, 9-10 (1953) for the proposition that "[j]udicial control over the evidence in a case cannot be abdicated to the caprice of executive officers").

[16] *Lancaster*, Case No. 5:23-cv-00063-EKD, ECF No. 39 at 4, 12-14, 21-23.

confidentiality designations, retains judicial authority to resolve those challenges, and leaves the applicable burdens of proof unchanged.[17] The designation process therefore operates subject to, rather than in place of, judicial oversight. These safeguards contradict Plaintiff's suggestion that DoS or MSA would exercise unreviewable authority over confidentiality determinations.

Plaintiff's reliance on *United States v. Reynolds*,[18] *Kowalski v. Tesmer*,[19] and *Buckley v. Valeo*[20]—two of which Plaintiff's lawyers relied on before[21]—is misplaced. None address the circumstances presented here. MSA is not asserting the government's state-secrets privilege, seeking to vindicate DoS's rights or interests on its behalf, or exercising governmental authority. Rather, MSA seeks a confidentiality order under Rule 26(c) to protect sensitive information produced in discovery, including information subject to MSA's own contractual confidentiality obligations. Unlike an assertion of governmental evidentiary privilege seeking to withhold particular information from discovery, the proposed order permits discovery subject to restrictions on the subsequent use and dissemination of designated information. Because the Court retains final authority over challenged designations, Plaintiff's constitutional objections provide no basis for denying the Motion.

**c. The *Iovino* Depositions Do Not Establish That the Proposed Confidentiality Order Would Improperly Restrict Discovery.**

---

[17] Under Paragraph 14, a party may challenge a confidentiality designation at any time without waiving that right by failing to object upon receipt. Upon written objection, the parties must meet and confer within ten calendar days. If the dispute remains unresolved, the objecting party prepares a draft joint letter, and the designating party must respond within five calendar days. Failure to respond results in the automatic removal of the designation. Otherwise, the Court resolves the dispute, with the applicable burdens of proof unchanged. ECF No. 29-5 ¶ 14.
[18] 345 U.S. 1 (1953).
[19] 543 U.S. 125 (2004).
[20] 424 U.S. 1 (1976).
[21] *Lancaster*, Case No. 5:23-cv-00063-EKD, ECF No. 39 at 19, 22 (citing *Reynolds* and *Buckley*); *Iovino*, Case No. 5:21-cv-00064-TTH-JCH, ECF No. 65-2 at 3 (quoting *Reynolds*); *Iovino*, Case No. 5:21-cv-00064-TTH-JCH, ECF No. 71 at 9 (quoting *Reynolds*).

Plaintiff's reliance on the *Iovino* depositions illustrates the concern MSA raised four years ago, on October 28, 2022, when it stated that Dr. Iovino's attorneys "may want to use things that they discover in this case to represent other clients, but it would just eviscerate the confidentiality order."[22] Plaintiff's counsel now invokes discovery obtained in *Iovino* to challenge the confidentiality protections sought in *Olech*, leveraging discovery obtained on behalf of one client to advance the litigation interests of another—the very practice MSA warned against in 2022. Specifically, Plaintiff relies on objections and instructions not to answer during the *Iovino* depositions as evidence that the proposed confidentiality order would improperly restrict discovery in this case.

The fifteen depositions Mr. Guyer cites in his declaration spanned approximately 20 hours, 2 minutes, and 14 seconds.[23] During that time, counsel for DoS or MSA objected that questions exceeded the scope of DoS's *Touhy* authorization 45 times—approximately once every 26 minutes and 43 seconds—and instructed witnesses not to answer 12 times—approximately once every 1 hour, 40 minutes, and 11 seconds.[24] Two objections were later withdrawn.[25] Viewed in context, these figures establish that substantial deposition testimony proceeded notwithstanding the objections Plaintiff identifies, undermining her characterization of the *Iovino* depositions as evidence that confidentiality protections in *Iovino* impeded discovery.

Importantly, those objections arose under DoS's *Touhy* procedures, not the confidentiality order. The distinction is critical: the *Touhy* process governs whether and under what circumstances

[22] *Iovino*, Case No. 5:21-cv-00064-TTC-JCH, ECF No. 76 at 21; *see also Iovino*, Case No. 5:21-cv-00064-TTC-JCH, ECF No. 76 at 20 ("I think my concern is that we go on to page 2, and [Mr. Guyer is] talking about wanting to share with two other joint representation clients.").
[23] **Ex. 3** at ¶ 18 (Ouellette Decl.).
[24] *Id.* at ¶¶ 19-20 (Ouellette Decl.).
[25] ECF No. 33-1 at ¶ 13.

DoS authorizes disclosure of official Department information,[26] whereas the proposed confidentiality order governs the treatment and dissemination of information produced in discovery. Regardless of the validity of any particular deposition objection, those objections do not establish that the confidentiality protections sought in *Olech* are unwarranted. Nor was there any judicial determination that the confidentiality order was improper or warranted modification. The *Iovino* Court never made any such determination, because Dr. Iovino never challenged these objections. If these objections were improper, why didn't Dr. Iovino's lawyers (who are also Dr. Olech's lawyers) challenge them at the time? Plaintiff cannot transform unarticulated *Touhy* disputes from a separate, settled action into evidence that substantially identical confidentiality protections would prejudice her now.

**d. Plaintiff's Objections to the Confidentiality Order is About Trying to Create *Touhy* Precedent.**

Plaintiff's Opposition emphasizes the recurrence of *Touhy* issues across *Iovino*, *Lancaster*, and *Olech*, the absence of appellate review, and the desire for a ruling limiting or eviscerating *Touhy*. Mr. Guyer's recent correspondence made this crystal clear. On October 21, 2026 at 4:46 PM, Mr. Guyer wrote:

> This material goes to the heart of the question now before Judge Hoppe: whether MSA can show good cause for an order that lets the government deem documents confidential. It concerns communications among State Department officials and MSA about an MSA employee at the same facility who raised concerns about the canine program. We do not believe it is confidential. But we will not use it outside Iovino without the Court's permission, so tonight's filing will not attach or describe it.[27]

In that same email thread, Samantha Lint, of the Department of State's Office of the Legal Adviser, offered the following: "Thank you for reaching out and keeping Department of State updated. As *Olech* is a separate and distinct matter from *Iovino*, Plaintiff is welcome to submit a

[26] 22 C.F.R. § 172.1.
[27] **Ex. 4** (10/21-23/26 email thread between T. Guyer, D. Ward, et al).

*Touhy* request to the Department of State with respect to the official Department information Plaintiff seeks to use in support of these motions."[28]

Mr. Guyer responded to Ms. Lint: "We are trying to still challenge the whole Touhy process, but thank you for your kind invitation."[29]

Mr. Guyer's answer is revealing. The Government Accountability Project—not Dr. Olech—has repeatedly declared its institutional interest in "challeng[ing] the whole Touhy process." GAP has pressed that objective across *Iovino*,[30] *Lancaster*,[31] and now *Olech*. That is GAP's goal, not a form of relief Dr. Olech seeks in her retaliation case. The distinction matters, because GAP's campaign to reshape *Touhy* has already diverged from its client's interests once. In *Iovino*, counsel took the *Touhy* orders to the Fourth Circuit under the collateral-order doctrine; the Court of Appeals dismissed the appeal for lack of jurisdiction; and Dr. Iovino then settled—so the ruling counsel sought never came, and the detour to the Court of Appeals and back yielded nothing for the client (other than years of delay and increased costs).[32]

An individual plaintiff's interest ordinarily lies in the prompt and economical resolution of her own claims—not in underwriting her counsel's test case or in an unnecessary interlocutory trip

---

[28] *Id.*
[29] *Id.*
[30] *See, e.g., Iovino*, Case No. 5:21-cv-00064-TTH-JCH, ECF No. 65-2 at 3-7 (explaining, at length, the Government Accountability Project's disagreement with *Touhy*); *Iovino v. Michael Stapleton Associates*, No. 24-1735, ECF No. 43 at 11 (4th Cir. Sept. 25, 2024) ("The importance of this [the *Touhy*] issue extends beyond the confines of this case, potentially affecting numerous other whistleblower actions and private lawsuits involving government contractors.").
[31] *See Lancaster*, Case No. 5:23-cv-00063-EKD, ECF No. 39 at 4-8 (explaining why *Touhy* does not apply to *Lancaster*), 12-15 (urging the Court to follow the ruling in *Menocal v. GEO Grp., Inc.*, Civil Action No. 14-cv-02887-JLK, 2017 WL 4334000 (D. Colo. June 6, 2017) rather than *Iovino v. Michael Stapleton Assocs.*, No. 5:21-CV-00064, 2024 WL 2412694 (W.D. Va. May 23, 2024), *aff'd sub nom. Iovino v. Michael Stapleton Assocs., Ltd.*, No. 5:21-CV-00064, 2024 WL 3520170 (W.D. Va. July 24, 2024)).
[32] ECF No. 33-1 at ¶¶ 11-12 (Guyer Decl.); *Iovino*, Case No. 5:21-cv-00064-TTH-JCH, ECF Nos. 382, 383.

to the Fourth Circuit. Whatever GAP's institutional stake in limiting or eviscerating *Touhy* may be, that interest is not Dr. Olech's, and it can neither supply good cause nor defeat it under Rule 26(c).

The focus of the present motion is whether the circumstances of this case warrant confidentiality protections under Rule 26(c). Nothing more. Plaintiff has not demonstrated how the *Iovino Touhy* objections or GAP's interest in "challeng[ing] the whole Touhy process") establish that the proposed order would unreasonably impair Dr. Olech's ability to prosecute her claims.

That the objectives of this litigation belong to Dr. Olech—not to her counsel's institutional agenda—only underscores the point. The client, not the lawyer, controls the objectives of the representation,[33] and a lawyer may not pursue a policy position adverse to a current client's position where doing so would "materially and adversely affect" the representation in the matter.[34] MSA does not ask the Court to resolve any question of professional responsibility. It asks only that GAP's stated interest in "challeng[ing] the whole Touhy process" not be mistaken for Dr. Olech's interest in prosecuting her retaliation claim.

**e. The Order Does Not Improperly Restrict Whistleblower Activity or Prejudice Plaintiff.**

Plaintiff next argues that the proposed confidentiality order would undermine the public interest in government contracting, restrict her rights under 41 U.S.C. § 4712, and prejudice her ability to pursue discovery. Plaintiff's lawyers tried these arguments in *Iovino*.[35] They failed then, and should fail now. Plaintiff's lawyers again tried these arguments in *Lancaster*.[36] They

---

[33] Va. Sup. Ct. R. PT 6 § 2 RPC 1.2.
[34] Restatement (Third) of the Law Governing Lawyers § 125 (2000).
[35] *Iovino*, Case No. 5:21-cv-00064-TTH-JCH, ECF No. 65 at 1-3 (describing the public's interests in access to courts and the anti-gag rule in relation to government contracting).
[36] *Lancaster*, Case No. 5:23-cv-00063-EKD, ECF No. 39 at 3 ("…awarding a broad confidentiality

failed then, and should fail now.

Plaintiff's reliance on the public nature of MSA's government contracts overlooks the distinction between information disclosed through civil discovery and information filed in the public judicial record. The Supreme Court has recognized that pretrial discovery is not a public component of civil litigation.[37] This Court reiterated that distinction in *Iovino*.[38] That the underlying contracts involve public funds does not transform all documents concerning their performance into public judicial records or eliminate legitimate confidentiality interests.

Plaintiff's objection to Paragraph 1 fares no better. Although Plaintiff emphasizes that the provision applies to "All Information" rather than only information designated confidential, this Court entered a confidentiality order containing the identical provision in *Lancaster*, notwithstanding Mr. Lancaster's opposition.[39] The provision governs the use of information produced or disclosed in this litigation; it does not automatically designate all such information confidential. Plaintiff offers no persuasive reason why the same provision, previously approved in closely related litigation, would be improper here.

Nor does the proposed order conflict with § 4712. Plaintiff invokes the statute's protections for whistleblower disclosures and its prohibition against waiving statutory rights. But MSA does not seek to prevent Plaintiff from pursuing her retaliation claim or exercising her statutory rights, nor does the proposed order purport to impose such limitations. Rather, it seeks reasonable

---

order in a whistleblower retaliation case undermines the very reason that Congress passed statutes like 41 U.S.C. § 4712…"), 8-11 (describing how MSA objected to Lancaster's RPDs as documents were subject to "confidentiality restrictions" and that MSA stated that before depositions occurred, a protective order was required).

[37] *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 33 (1984).

[38] *Iovino*, 2022 WL 17581491, at *5.

[39] *Lancaster*, Case No. 5:23-cv-00063-EKD, ECF No. 45 (entered confidentiality order); **Ex. 2** (redline comparison of *Lancaster* confidentiality order with proposed *Olech* confidentiality order, showing the only changes were to the case caption, formatting, date, district judge, and counsel of record).

restrictions on the use and dissemination of confidential information obtained through civil discovery.

**f. The Proposed Confidentiality Order Does Not Shift the Burden Imposed by Applicable Law.**

Plaintiff's assertion that the proposed order improperly shifts the burden of challenging confidentiality designations ignores the proposed order's express preservation of the burdens imposed by applicable law. Plaintiff's lawyers tried this argument in *Iovino.*[40] It failed then, and should fail now. Plaintiff's lawyers again tried this argument in *Lancaster.*[41] It failed then, and should fail now.

As explained above, Paragraph 14 provides a procedure for challenging designations, while leaving the ultimate determination to the Court. In *Iovino*, the Court considered identical language and recognized that the party seeking confidential treatment retains the burden of establishing that the challenged information qualifies for protection.[42] Likewise, the requirement that the parties confer before seeking judicial intervention does not deprive Plaintiff of meaningful review. Rather, it provides an orderly mechanism for resolving disagreements over particular designations without requiring the Court to review every document in the first instance. The interim treatment of disputed materials as confidential preserves the status quo pending resolution of the dispute, and the availability of judicial review does not eliminate the designating party's obligation to establish that challenged material qualifies for protection.

---

[40] *Iovino*, Case No. 5:21-cv-00064-TTH-JCH, ECF No. 65-1 at 6-7 (Iovino's objection to Paragraph 14 stating that the "The burden or [sic] proof and persuasion are at all times on the designating party and this Order should so state in the clearest terms.").

[41] *Lancaster*, Case No. 5:23-cv-00063-EKD, ECF No. 39 at 17-18 (stating umbrella protective orders "let the contractor or defendant self-designate entire swaths of evidence as off-limits unless challenged individually, confounding the Rule 26 burden of proof.").

[42] *Iovino*, 2022 WL 17581491, at *5; *see also* **Ex. 1** (redline comparison of *Iovino*'s confidentiality order versus proposed *Olech* confidentiality order).

Plaintiff's contention that MSA has improperly conditioned production on entry of a confidentiality order mischaracterizes the purpose of the requested relief. MSA does not contend that confidentiality renders otherwise discoverable information immune from production. Rather, it seeks an appropriate framework for producing sensitive information without risking unauthorized dissemination or compromising its contractual obligations. The fact that MSA has sought entry of a confidentiality order before producing materials subject to confidentiality restrictions does not establish that the order itself is improper. In fact, the entry of the requested confidentiality order may be considered by DoS in making its determination to comply with a *Touhy* demand or request, so the entry of the requested confidentiality order will likely facilitate discovery, not hinder it.[43]

Finally, Plaintiff discounts the privacy interests of nonparty employees on the ground that MSA has not identified specific affected individuals, records, or resulting harm. But Rule 26(c) authorizes the entry of a confidentiality order upon a showing of good cause, and the Advisory Committee recognized that "interests in privacy may call for a measure of extra protection."[44] Plaintiff requested "the complete personnel and disciplinary file" for an MSA employee.[45] MSA agreed to provide it. Such records may contain sensitive personal information unrelated to the merits of Plaintiff's claims. The Court may account for those privacy interests in determining whether appropriate confidentiality protections are warranted.

**g. Plaintiff's Remaining Procedural Objections and Requests for Additional Relief Do Not Warrant Denial of the Motion.**

Plaintiff's remaining arguments concern MSA's compliance with pre-motion procedures,

[43] *See, e.g.,* 22 C.F.R. §172.8(7) (Considerations in determining whether DoS will comply with a demand or request includes "Whether compliance would have an adverse effect on performance by the Department of its mission and duties").
[44] FED. R. CIV. P. 26(c)(1) Advisory Committee's Note to 1970 Amendment.
[45] **Ex. 5** at 9 (Olech's First Set of Discovery Directed to MSA, Request No. 9).

proposed judicial oversight of future DoS *Touhy* determinations, and interlocutory review under 28 U.S.C. § 1292(b). None establishes that the proposed confidentiality order is unwarranted under Rule 26(c).

Plaintiff first argues that MSA failed to comply with the Court's pre-motion procedures and Rule 26(c)(1)'s conferral requirement. The parties engaged in extensive discussions concerning the proposed order before MSA filed its Motion. MSA circulated the proposed order on May 26, 2026, sent several subsequent emails, and participated in a September 23, 2026 meet-and-confer conference where the proposed confidentiality order was discussed.[46] Plaintiff ultimately communicated on September 30, 2026, that she did not agree that any confidentiality order was warranted.[47] These exchanges demonstrate that MSA attempted in good faith to resolve the dispute without judicial intervention, as Rule 26(c)(1) requires. Although MSA did not separately contact chambers or submit the joint document contemplated by the Court's pre-motion procedures, those procedural omissions do not negate the substantive grounds for confidentiality protections under Rule 26(c).[48]

Plaintiff also asks the Court to prescribe procedures for future DoS *Touhy* determinations, including a fourteen-day deadline for written decisions and a mechanism for judicial review. But MSA's Motion seeks a confidentiality order governing discovery materials, not a determination of DoS's obligations under its *Touhy* regulations or the Administrative Procedure Act. DoS is not a party to this action, and the issue of imposing new obligations on the Department is not before the Court. Any dispute concerning a particular *Touhy* determination should be addressed through an appropriate procedure if and when an actual dispute arises. The Court need not resolve hypothetical

---

[46] ECF No. 29-1 at 2-3 (citing ECF No. 29-2, 29-3).
[47] ECF No. 29-1 at 3 (citing ECF No. 29-4).
[48] To the extent the Court determines that further compliance with those procedures is necessary, MSA respectfully requests an opportunity to cure the omissions rather than denial of its Motion.

disputes to determine whether the proposed confidentiality order is warranted.

Plaintiff requests certification under 28 U.S.C. § 1292(b) if the Court grants any portion of MSA's Motion. That request likewise provides no basis for denying the Motion. Section 1292(b) requires a controlling question of law, substantial ground for difference of opinion, and a determination that immediate appeal may materially advance the ultimate termination of the litigation.[49] Plaintiff fails to establish that these requirements are satisfied, particularly that immediate appellate review of a confidentiality order would materially advance resolution of her retaliation claim.

Plaintiff's reliance on the doctrine of matters capable of repetition yet evading review is misplaced for three independent reasons. First, the doctrine is a narrow exception to mootness. It governs only whether a court may reach an otherwise-moot claim—a question of jurisdiction assessed "before [a court] reach[es] the merits."[50] It is not a substitute for the statutory requirements of § 1292(b), and it supplies no standard for granting or denying a protective order.

Second, the doctrine applies "only in exceptional situations" where the challenged action is too short to be fully litigated and "there [is] a reasonable expectation that the same complaining party [will] be subject to the same action again."[51] The plaintiffs in *Iovino*, *Lancaster*, and *Olech* are Dr. Iovino, Mr. Lancaster, and Dr. Olech. Three different people. The only recurring participants are MSA, the party that ***seeks*** the order, and Plaintiff's counsel, GAP. The Fourth Circuit emphasizes the "same complaining party" requirement,[52] and measures recurrence by whether the challenged action will be "applied against the plaintiffs again,"[53] not by whether a

[49] 28 U.S.C. § 1292 (West).
[50] *Kingdomware Techs., Inc. v. United States*, 579 U.S. 162, 169, 136 S. Ct. 1969, 1975-1976, 195 L. Ed. 2d 334 (2016).
[51] *Spencer v. Kemna*, 523 U.S. 1, 17-18, 118 S. Ct. 978, 988, 140 L. Ed. 2d 43 (1998).
[52] *Williams v. Ozmint*, 716 F.3d 801, 809-810 (4th Cir. 2013).
[53] *Lux v. Judd*, 651 F.3d 396, 401 (4th Cir. 2011).

defendant or a shared law firm may encounter the question in other cases. Dr. Olech has made no showing that she herself will again be subject to such an order.

Third, the premise that these orders "evade review" is incorrect. Discovery orders are "inherently interlocutory and typically not appealable,"[54] and "most discovery rulings are not final."[55] The class of collaterally appealable orders is "narrow and selective in its membership"[56] and does not reach orders—like this one—that burden litigants without imperiling "a substantial public interest."[57] The Fourth Circuit's dismissal of Dr. Iovino's appeal and her settlement before final judgment do not render the orders improper or insulate them from review, because the Supreme Court "routinely require[s] litigants to wait until after final judgment to vindicate valuable rights."[58] For the same reason, the lack of appellate review in *Iovino*, which Dr. Iovino settled, and in *Lancaster*, which remains ongoing, establishes nothing about whether a confidentiality order is warranted here.

## III. CONCLUSION

Plaintiff's Opposition invites the Court to resolve broad constitutional questions that are unnecessary to the disposition of MSA's Motion. The question before the Court is narrower: whether MSA has established good cause under Rule 26(c) for the requested confidentiality protections. The Court has already recognized substantially similar confidentiality interests in related litigation and entered confidentiality orders addressing those interests. Those prior determinations provide substantial support for the requested relief, and Plaintiff offers no

---

[54] *Nicholas v. Wyndham Int'l, Inc.*, 373 F.3d 537, 541 (4th Cir. 2004) (quoting *McCook Metals LLC v. Alcoa, Inc.*, 249 F.3d 330, 335 (4th Cir. 2001) in part).
[55] *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 108, 130 S. Ct. 599, 606, 175 L. Ed. 2d 458 (2009) (quoting 15B C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure § 3914.23, at 123 (2d ed.1992)).
[56] *Id.* at 113 (quoting *Will v. Hallock*, 546 U.S. 345, 350, 126 S.Ct. 952, 163 L.Ed.2d 836 (2006)).
[57] *Will*, 546 U.S. at 352-353.
[58] *Mohawk Indus., Inc.*, 558 U.S. at 108-109.

persuasive reason to reach a different conclusion here. Accordingly, MSA respectfully requests that the Court grant its Motion and enter the proposed confidentiality order or, alternatively, enter an appropriately modified order protecting the categories of information for which good cause has been established.

Date: October 28, 2026

Respectfully submitted,

/s/Paxton R. L. Ouellette
Daniel S. Ward (VSB 45978)
Paxton R. L. Ouellette (VSB 101680)
WARD & BRADEL, PLLC
1751 Pinnacle Drive, Suite 900
Tysons, VA 22102
(202) 331-8160
(202) 505-7100 Fax
dan@wardbradel.com
pouellette@wardbradel.com
*Attorneys for Defendant Michael Stapleton Associates, Ltd., d/b/a MSA Security, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 28, 2026, I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the Western District of Virginia by using the CM/ECF system. I certify that the following participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Joshua Erlich
The Erlich Law Office
1550 Wilson Blvd #700
Arlington, VA 22209
(703) 791-9087
jerlich@erlichlawoffice.com

Stephani L. Ayers
GOVERNMENT ACCOUNTABILITY PROJECT
1612 K St. NW, Suite 1100
Washington, DC 20006
(813) 382-7865
stephani@whistleblowerdefenders.com

Thad M. Guyer
T.M. Guyer & Friends, PC
116 Mistletoe Street
Medford, OR 97501
(202) 227-3590
thad@guyerfriends.com

/s/