CLERKS OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED
November 13, 2026
LAURA A. AUSTIN, CLERK
BY: s/ D. AUDIA
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

Carolyn Olech,

Plaintiff,

v.

Michael Stapleton Associates, LTD., d/b/a MSA Security, Inc.,

Defendant.

Civil Action No. 5:25-cv-00152

## MEMORANDUM OPINION

Plaintiff Carolyn Olech, a veterinarian and former employee of Defendant Michael Stapleton Associates, LTD. ("MSA"), alleges that she was unlawfully terminated by MSA in retaliation for reporting misconduct at a canine-training facility. She claims that MSA, a government contractor, fired her in violation of the federal contractor whistleblower statute, 41 U.S.C. § 4712.

This matter is before the court on MSA's motion to dismiss the complaint for failure to state a claim, or, in the alternative, strike portions of the complaint. (Dkt. 4.) For the reasons that follow, the court will deny the motion to dismiss and grant in part and deny in part the motion to strike.

# I. Background

## A. Factual History[1]

Carolyn Olech is a veterinarian. (Compl. ¶ 11 (Dkt. 1).) In June 2016, MSA hired her to provide healthcare to canines at a facility in Winchester, Virginia. (*Id.*) The facility trains bomb-detecting canines for the U.S. Department of State ("State Department") pursuant to a government contract. (*Id.* ¶ 13.) Shortly after her hiring, Olech began to observe dangerous misconduct by Jennifer Houston, a fellow employee and licensed veterinary technician, that posed a risk to the canines' health and safety. (*Id.* ¶ 16.) Olech alleges that Houston was chronically tardy or absent from work and used alcohol before and during work hours. (*Id.* ¶¶ 16, 28.)

Between 2016 and 2018, Olech expressed her concerns about Houston to her superiors several times. (*Id.* ¶¶ 29–38.) She reported issues with Houston to her direct supervisor, Michael Ratcliff, as well as the program manager, Mike Hayes. (*Id.*) In 2018, she also escalated her concerns to Peter Deegan, a vice president of human resources at MSA's corporate headquarters in New York. (*Id.* ¶ 38.)

In 2018, Olech also participated in investigations of MSA by the State Department Office of the Inspector General ("OIG"). (*Id.* ¶¶ 39–40.) On June 27, 2018, Olech discussed her concerns about Houston, including Houston's alcohol issues and allegations of mistreatment of canines, as well as other instances of mismanagement at the facility with OIG

[1] The following facts are taken from Olech's complaint and are assumed to be true for the purposes of a Rule 12(b)(6) motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Additionally, the court considers "documents attached to the complaint, as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic." *Philips v. Pitt Cnty. Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (citations omitted).

investigators. (*Id.* ¶ 39.) On August 22, 2018, Olech met again with OIG investigators to discuss other issues related to the canines' care. (*Id.* ¶ 40.)

In early 2019, Olech participated in an investigation by the Virginia Department of Health Professionals ("DHP") regarding Houston's alcohol abuse. (*Id.* ¶ 41.) Olech provided evidence to the DHP investigators, which ultimately led to the indefinite loss of Houston's veterinary technician license sometime in 2020. (*Id.* ¶ 18, 41.) Despite the loss of her license, Houston remained an employee at MSA. (*Id.* ¶ 19.)

In 2018 and 2019, Olech suffered from various negative treatment from her supervisors that marginalized her and diminished her reputation and authority in the workplace. (*Id.* ¶ 46–60.) This treatment included verbal denigration by supervisors, exclusion from meetings and decision-making, denial of accommodations, and unwarranted criticisms, among other adverse actions. (*Id.* ¶ 46–56.) Olech alleges this pattern of marginalization and isolation was in retaliation for her complaints regarding Houston's intoxication. (*Id.* ¶¶ 46–48, 60–61.)

On August 6, 2021, an incident occurred where a canine latched onto a trainer's arm, requiring physical separation. (*Id.* ¶ 20.) MSA employees administered tranquilizers to subdue the canine. (*Id.*) Houston was one of the MSA employees involved in tending to the canine during this incident, despite having previously lost her license. (*Id.* ¶¶ 18, 21.) Olech witnessed these interactions and created Encounter Notes documenting the incident in MSA's internal record-keeping system. (*Id.* ¶ 20)

On February 7, 2022, DHP sent notice to Houston and another veterinarian that it was investigating allegations that Houston had operated as a veterinary technician without a valid license during the August 6, 2021 incident. (*Id.* ¶ 21.) DHP's notice letter contained Olech's Encounter Notes describing the incident. (*Id.*)

MSA subsequently initiated an internal investigation into how DHP had obtained Olech's Encounter Notes. (*Id.* ¶ 22.) On February 23 or 24, 2022, MSA placed Olech on paid administrative leave based on the findings of its investigation. (*Id.* ¶ 22, 57.) MSA alleged that Olech had deleted or destroyed records during her work, which Olech denies. (*Id.* ¶ 58.) On July 8, 2022, MSA's outside counsel interviewed Olech. (*Id.* ¶ 23.) During the interview, Olech acknowledged she emailed certain documents, like canine records and incident reports, to her personal email address. (*Id.*)

On July 18, 2022, DHP interviewed Olech about the August 6, 2021 incident.[2] (*Id.* ¶¶ 24, 42.) She provided information to DHP about the treatment of the canine in that incident and MSA's failure to create certain reports following the incident. (*Id.*)

MSA terminated Olech's employment on July 19, 2022. (*Id.* ¶¶ 25, 59.) The stated reason for termination was that Olech had copied and preserved documentary evidence, in

[2] Olech's complaint appears to be inconsistent about the date of her 2022 interview with DHP regarding the August 6, 2021 incident. At paragraph 24, she states the DHP interview was on July 18, 2022. (Compl. ¶ 24.) She also states that the date of her termination, July 19, 2022, was the day after her DHP interview. (*Id.* ¶ 59.) But at paragraph 42, she alleges that on July 8, 2022, she was interviewed about the August 6, 2021 incident by an investigator from the Virginia Board of Veterinary Medicine. (*Id.* ¶ 42.) The Virginia Board of Veterinary Medicine is part of DHP. Va. Code. Ann. § 54.1-2503 (2025). It is unclear whether these were two separate interviews, or if the reference to July 8 is a typo and only one interview with DHP investigators occurred on July 18 (or vice versa). The OIG report references only a single DHP interview concerning the August 6, 2021 incident, which took place on July 18, 2022. (Def.'s Ex. 1 at 5 (Dkt. 19-1).) Furthermore, July 8, 2022 was the date of Olech's interview with MSA's outside counsel. (Compl. ¶ 23.) Therefore, it seems most likely that the reference to a July 8, 2022 interview with DHP is an error and the court will assume that only one interview with DHP regarding the August 6, 2021 incident occurred on July 18, 2022. Regardless, the court's analysis below would not be affected by the ten-day difference between the two dates.

violation of MSA's Code of Conduct and Employee Confidentiality Agreement. (*Id.* ¶¶ 25, 59.)

**B. Procedural History**

On February 2, 2023, Olech filed an administrative complaint with the State Department Office of the Inspector General ("OIG"). (*Id.* ¶ 4.) OIG found that while Olech "made at least one protected disclosure that contributed to the termination of her employment, MSA provided clear and convincing evidence that it would have taken the adverse personnel actions regardless of her disclosures." (*Id.* ¶ 5.) In particular, OIG found that Olech had made protected disclosures to MSA management and OIG when she raised concerns about Houston's alcohol abuse from 2016 through 2018. (Def.'s Ex. 1 at 7 (Dkt. 19-1).) These disclosures, however, were too distant in time from her paid administrative leave and termination in 2022 to qualify as contributing factors to those personnel actions. (*Id.* at 7–8.) OIG also found that Olech made a protected disclosure in her DHP interview on July 18, 2022, the day before her termination, and that MSA had been aware of the planned interview ahead of time. (*Id.* at 8.) Therefore, OIG found Olech had met her burden in establishing that a protected disclosure was a contributing factor to her termination. (*Id.*)

Nevertheless, OIG determined that MSA had demonstrated by clear and convincing evidence that it had a legitimate reason for terminating Olech and would have done so even absent the protected disclosure. (*Id.* at 9–10.) MSA's stated basis for terminating Olech was that she removed, deleted, and destroyed confidential government documents without authorization. (*Id.*) The Division Director of the Office of the Procurement Executive of the

State Department subsequently denied Olech relief on June 25, 2024. (Compl. ¶ 6; *see* Def.'s Ex. 2 (Dkt. 19-2).)

Olech filed a complaint in this court on December 29, 2025. (Dkt. 1.) The complaint alleges one count of whistleblower retaliation under 41 U.S.C. § 4712. (Compl. ¶¶ 64–79.) On March 24, 2026, MSA moved to dismiss for failure to state a claim. (Dkt. 4.) Olech responded on April 7, 2026, (Dkt. 9), and MSA replied on April 14, 2026 (Dkt. 11).

## II. Standard of Review

Motions to dismiss under Rule 12(b)(6) test the legal sufficiency of a complaint. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). They do not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 616 (4th Cir. 2020) (quoting *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016)). To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead sufficient factual allegations to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In reviewing a motion to dismiss for failure to state a claim, "a court must consider the factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff." *Bing*, 959 F.3d at 616.

The court may strike from any pleading "any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). In applying this rule, a district court has broad

discretion in deciding whether to strike matters from pleadings. *See Renaissance Greetings Cards, Inc. v. Dollar Tree Stores, Inc.*, 227 F. App'x 239, 246–47 (4th Cir. 2007) (finding that the district court did not abuse its discretion in granting a motion to strike when its ruling was "reasonable and not overreaching"). "[S]triking a portion of a pleading is a drastic remedy" and such motions are "generally viewed with disfavor." *Waste Mgmt. Holdings, Inc. v. Gilmore*, 252 F.3d 316, 347 (4th Cir. 2001). The moving party bears the burden to show that the challenged material is prejudicial. *Hardy v. Lewis Gale Med. Ctr.*, 377 F. Supp. 3d 596, 605 (W.D. Va. 2019). Any doubt about whether the challenged material should be stricken is resolved in favor of the non-moving party. *Sturdivant v. Arc of Haywood Cnty., Inc.*, No. 1:18-cv-123, 2018 WL 2138543, at *1 (W.D.N.C. May 9, 2018).

## III. Analysis

To state a claim under 41 U.S.C. § 4712, a plaintiff must allege that she (1) was an employee of a government contractor; (2) disclosed information that she reasonably believed was evidence of mismanagement or misconduct as described in § 4712(a)(1); (3) made the disclosure to a covered body or person listed in § 4712(a)(2); and (4) suffered an adverse personnel action in retaliation by the employer. *See, e.g.*, *Pritchard v. Metro. Wash. Airports Auth.*, No. 1:18-cv-1432, 2019 WL 5698660, at *12 (E.D. Va. Nov. 4, 2019).

To determine whether an adverse personnel action was in retaliation for a protected disclosure, courts must use the "legal burdens of proof specified in [5 U.S.C. § 1221(e)]." 41 U.S.C. § 4712(c)(6). Section 1221(e) instructs that a plaintiff must allege that her protected disclosure was a "contributing factor" to the adverse personnel action. *See* 5 U.S.C.

§ 1221(e)(1). This can be established by direct or circumstantial evidence, such as evidence of the employer's knowledge of the protected disclosure or temporal proximity to the adverse personnel action. *Id.* § 1221(e)(1)(A)–(B). The employer may then rebut the plaintiff's case if it "demonstrates by clear and convincing evidence that it would have taken the same personnel action in the absence of such disclosure." *Id.* § 1221(e)(2).

A plaintiff seeking to sue under § 4712 must first exhaust her administrative remedies by making a complaint to the Inspector General of the relevant agency. *See* 41 U.S.C. § 4712(c)(2); *Iovino v. Michael Stapleton Assocs., Ltd.*, 600 F. Supp. 3d 610, 618 (W.D. Va. 2022). Unless the complaint is frivolous, fails to allege a violation of § 4712(a), or has already been addressed in another proceeding, the Inspector General investigates the complaint and prepares a report of findings. 41 US.C. § 4712(b)(1). The head of the relevant agency must then review the Inspector General's report and determine whether there is sufficient basis to conclude that the government contractor unlawfully retaliated against the complainant. *Id.* § 4712(c)(1). If so, the agency may order one or more of the remedies listed in § 4712(c)(1). Otherwise, the agency may issue an order denying relief, in which case "the complainant shall be deemed to have exhausted all administrative remedies with respect to the complaint, and the complainant may bring a de novo action at law or equity against the contractor . . . to seek compensatory damages and other relief available under this section in the appropriate district court of the United States." *Id.* § 4712(c)(2).

It is undisputed that Olech was an employee at MSA, a government contractor for the State Department. MSA also does not appear to dispute that Olech reasonably believed the

information she disclosed about Houston's misconduct fell within § 4712(a)(1). Therefore, the court must determine whether Olech has sufficiently alleged that she made disclosures to a covered person or body and whether those disclosures were a "contributing factor" to MSA's adverse personnel actions.

To answer these questions, the court must first address whether Olech has administratively exhausted all the allegations raised in her federal court complaint. This will establish *which* disclosures and adverse personnel actions alleged in the complaint may be considered by the court. Then, the court must determine whether the persons or entities to which Olech made a disclosure fell within § 4712(a)(2). Only then may the court determine which of Olech's disclosures were protected by the statute and for which retaliatory actions those disclosures may have been a contributing factor.

**A. Administrative Exhaustion**

MSA contends that Olech's complaint contains additional claims and allegations that were not part of her OIG complaint. (Def.'s Supp. Mem. at 13–17 (Dkt. 5).) Two other judges in this district have addressed similar arguments by MSA in related litigation. *See Iovino*, 600 F. Supp. 3d at 620–26; *Lancaster v. Michael Stapleton Assocs., Ltd.*, No. 5:23-cv-00063, 2024 WL 1977175, at *3–*7 (W.D. Va. May 3, 2024). Under Fourth Circuit precedent, the test for administrative exhaustion is whether Olech's allegations in federal court are "reasonably related" to the claims that she raised in her OIG complaint and OIG's subsequent investigation. *See Sydnor v. Fairfax County*, 681 F.3d 591, 594 (4th Cir. 2012). Only those claims "that can be expected to follow from a reasonable administrative investigation" are considered

exhausted. *Id.* If the "administrative charges reference different time frames, actors, and discriminatory conduct than the central factual allegations in [the plaintiff's] formal suit," then the plaintiff has failed to exhaust administrative remedies. *Chachko v. Patuxent Inst.*, 429 F.3d 505, 506 (4th Cir. 2005).

Some of the statements contested by MSA are factual allegations that were already explicitly mentioned and substantiated in Olech's OIG investigation. *See Iovino*, 600 F. Supp. 3d at 623. MSA argues that paragraphs 40, 44, and 61 of the complaint refer to Olech's participation in other OIG investigations unrelated to the present case. (Def.'s Supp. Mem. at 16.) But the OIG report for Olech's complaint expressly notes that "[i]n June and August 2018, Dr. Olech also met with OIG employees during a review of the Department's canine program. During those meetings, she told OIG employees about the Vet Tech's abuse of alcohol and mistreatment of canines, among other issues." (Def.'s Ex. 1 at 3.) MSA similarly contests paragraph 41 for discussing Olech's participation in a 2019 DHP investigation. (Def.'s Supp. Mem. at 16.) But the OIG report also expressly mentions that "[i]n early 2019, DHP investigated the Vet Tech's misconduct regarding alcohol abuse. Dr. Olech was interviewed and provided evidence during this investigation." (Def.'s Ex. 1 at 3.) "The best determination of whether 'a reasonable investigation of [the complainant's] administrative charge would have uncovered the factual allegations set forth in formal litigation' is whether the agency's investigation in fact uncovered that information." *Iovino*, 600 F. Supp. 3d at 623 (quoting *Chachko*, 429 F.3d at 512). The court finds that each of these allegations is reasonably

related to Olech's claims in the OIG investigation and will deny MSA's motion to strike paragraphs 40, 41, 44, and 61 of the complaint.

MSA also points to a number of paragraphs in the complaint as vague or conclusory. (Def.'s Supp. Mem. at 16.) While a vague or conclusory statement in a complaint is not afforded the presumption of truth under *Iqbal*, that does not mean it must also be struck from the complaint. *See Iovino*, 600 F. Supp. 3d at 622–23. Absent a showing of prejudice to MSA, the court will deny MSA's motion to strike paragraphs 20, 26, 27, 43, 45, and 61. Similarly, while Olech's allegation that the State Department official was biased against her is conclusory and not supported by factual allegations, it is not prejudicial to MSA; at most, it might be prejudicial to the State Department, a non-party. For that reason, the court will also deny MSA's motion to strike paragraph 6. (*See* Def.'s Supp. Mem. at 4.)

However, the court finds that Olech failed to exhaust one set of allegations. Olech's complaint alleges, apparently for the first time, that MSA retaliated against her by creating a hostile work environment. (Compl. ¶¶ 46–56, 60.) She details various instances between 2018 and 2019 in which her supervisors marginalized her and diminished her reputation at work. (*Id.* ¶¶ 46–56, 60, 72(a)–(c).) These allegations are new and not reasonably related to the OIG investigation because they present a new basis of liability that was never addressed in the OIG report. The only two forms of retaliation discussed by the report were MSA placing Olech on paid administrative leave on February 24, 2022, and terminating her on July 19, 2022. (Def.'s Ex. 1 at 1–2, 4–5.) There is nothing in the administrative record suggesting that Olech raised the various forms of marginalization and isolation by her supervisors that she now alleges in

her complaint. Indeed, OIG's final determination turned on the fact that MSA did not retaliate against Olech until 2022. Recall that OIG found that Olech's disclosures to MSA management and OIG were protected under § 4712, but neither disclosure was a contributing factor to the adverse personnel actions against her. (Def.'s Ex. 1 at 8.) This is because the disclosures to MSA management and OIG were made from 2016 to 2018, whereas the adverse personnel actions were in 2022. (*Id.*) Thus, OIG's conclusion was based on the premise that MSA's *only* adverse personnel actions against Olech were placing her on leave and terminating her, both in 2022.

To the extent Olech alleges that MSA retaliated against her by creating a hostile work environment or treating her worse in 2018 through 2019, these allegations "reference different time frames, actors, and discriminatory conduct" than what was covered in the OIG investigation. *Chachko*, 429 F.3d at 506. Adding new forms of retaliation to her complaint would "multiply the theories by which she seeks relief" and "the court would have to consider new conduct that occurred across a new time frame." *Iovino*, 600 F. Supp. 3d at 625. Therefore, the court finds that paragraphs 46 through 56, 60, and 72(a) through 72(c) of Olech's complaint should be struck because she failed to administratively exhaust these allegations. As a consequence, the court will only consider Olech's paid administrative leave and termination in 2022 as the two forms of adverse personnel action by MSA.

### B. Protected Disclosures Under § 4712

The court must now address which of Olech's disclosures are protected by § 4712. MSA does not dispute that the content of Olech's disclosures fell within § 4712(a)(1), nor that

Olech reasonably believed that her disclosures were evidence of misconduct within the statute. However, a disclosure is only protected if it is made to one of seven categories of covered persons or bodies. 41 U.S.C. § 4712(a)(2)(A)–(G). Prior to filing her OIG complaint, Olech reported her concerns about Houston's alcohol abuse to (1) members of MSA management, including her supervisor Michael Ratcliff, the facility program manager Mike Hayes, and a vice president of MSA, Peter Deegan; (2) the State Department Office of the Inspector General; and (3) the Virginia Department of Health Professions. (Compl. ¶¶ 29–42.) Her disclosures to MSA management occurred between 2016 and 2018. (*Id.* ¶¶ 29–38.) Her interviews with OIG were in 2018, (*id.* ¶¶ 39–40), and her interviews with DHP were in 2019 and 2022, (*id.* ¶¶ 41–42).

The State Department OIG is a covered body. 41 U.S.C. § 4712(a)(2)(B). The statute also covers "management official[s] or other employee[s] of the contractor . . . who ha[ve] the responsibility to investigate, discover, or address misconduct." *Id.* § 4712(a)(2)(G). Olech does not explicitly allege in her complaint that Ratcliff, Hayes, and Deegan were responsible for investigating, discovering, or addressing misconduct. However, drawing all reasonable inferences in favor of the plaintiff, it is reasonable to assume that a direct supervisor of veterinarians, the facility's program manager, and a vice president of human resources would have responsibility for investigating, discovering, or addressing misconduct committed by a veterinary technician on the job. Hence, the court finds that Olech's disclosures to MSA management between 2016 and 2018 and her disclosures to OIG in 2018 were protected under § 4712(a).

Whether DHP, as a state government agency, is a covered body under § 4712(a)(2) appears to be an issue of first impression. OIG determined that DHP fell within § 4712(a)(2)(E), which provides that "[a]n authorized official of the Department of Justice or other law enforcement agency" is a covered person or body. (Def.'s Ex. 1 at 8.) OIG noted a lack of statutory guidance and relevant case law but decided to construe the statute broadly in favor of protecting the whistleblower. (*Id.*) OIG reasoned that because DHP enforces various state laws pertaining to the regulation of health professions, it was within the meaning of "other law enforcement agency." (*Id.*)

There appears to be no case law interpreting the scope of § 4712(a)(2)(E) and the parties only address this question in passing. (Def.'s Supp. Mem. at 12–13; Pl.'s Opp. Mem. at 17-18 (Dkt. 9); Def.'s Reply at 5 (Dkt. 11).) Nevertheless, the court finds that this issue must be resolved to determine whether Olech has stated a claim.[3]. Because Olech's action in this court is *de novo*, the court owes no deference to OIG's interpretation of the statute. 41 U.S.C. § 4712(c)(2). For the reasons below, the court holds that DHP is a covered entity within the meaning of "other law enforcement agency" in § 4712(a)(2)(E).

The seven categories of covered persons or entities under the statute are: (A) a Member of Congress or representative of a committee of Congress, (B) an Inspector General, (C) the Government Accountability Office, (D) a federal employee responsible for contract or grant

[3] Olech argues that this question cannot be resolved at this procedural stage because more discovery could be required. (Pl.'s Opp. Mem. at 17–18.) It is unclear why this would be true. The issue is a pure question of law that can be resolved by statutory interpretation. And the answer is critical for Olech's *prima facie* case because the timing between each of her protected disclosures and MSA's adverse personnel actions is relevant for whether the disclosures were contributing factors in MSA's actions.

oversight or management at the relevant agency, (E) an authorized official of the Department of Justice or other law enforcement agency, (F) a court or grand jury, and (G) a management official or other employee of the contractor responsible for investigating, discovering, or addressing misconduct. 41 U.S.C § 4712(a)(2). DHP is empowered by Virginia law to "enforce the statutes and regulations pertaining to the Department and the health regulatory boards." Va. Code Ann. § 54.1-2506(A) (2025). Specifically, DHP and its constituent health regulatory boards, such as the Board of Veterinary Medicine, deal with the licensing of health professionals under state law. *See id.* §§ 54.1-2400, 54.1-3804. Furthermore, DHP has the authority to investigate violations of statutes and regulations under its purview, inspect facilities, issue subpoenas and summonses, and obtain warrants. *Id.* § 54.1-2506(A)–(C). Therefore, DHP is a "law enforcement agency" within the plain meaning of § 4712(a)(2)(E). This interpretation is consistent with Congress's intent to offer broad protection to whistleblowers and shield them from retaliation when they report wrongdoing to a broad set of persons or bodies that can take corrective action. *See Flynn v. United States Sec. & Exch. Comm'n*, 877 F.3d 200, 205 (4th Cir. 2017) (noting "Congress' intent to 'broadly' protect individuals who disclose wrongdoing" (cleaned up) (citation omitted)). Thus, the court finds that Olech's reports to DHP in 2019 and 2022 were also protected disclosures under § 4712.

### C. Contributing Factor Analysis

Having established which of MSA's alleged retaliatory actions may properly be considered and which of Olech's disclosures are protected under § 4712, the court can now determine whether any of Olech's protected disclosures were a contributing factor to MSA's

adverse personnel actions. While there is limited case law applying the "contributing factor" standard under § 4712, the Fourth Circuit has regularly applied the same standard in cases involving other analogous statutes. *See Finley v. Kraft Heinz, Inc.*, 146 F.4th 382, 389 n.4 (4th Cir. 2025). To state a *prima facie* claim, a plaintiff only needs to show that the protected activity "tend[ed] to affect in any way" the employer's decision to terminate her. *Id.* at 390 (quoting *Feldman v. Law Enforcement Assocs. Corp.*, 752 F.3d 339, 348 (4th Cir. 2014)) (alteration in original). She does not need to show that the protected activity was the "primary or even a significant cause" for the employer's adverse personnel action. *Id.* A key factor in this analysis is whether "the personnel action occurred within a period of time such that a reasonable person could conclude that the disclosure or protected activity was a contributing factor in the personnel action." 5 U.S.C. § 1221(e)(1)(B). However, even though this standard is "broad and forgiving," the "causal connection may be severed by the passage of a significant amount of time, or by some legitimate intervening event." *Feldman*, 752 F.3d at 348 (citation omitted).

The court finds that Olech made three protected disclosures: her reports to MSA management between 2016 and 2018, her interviews with OIG in 2018, and her disclosures to DHP in 2019 and 2022.[4] Olech's disclosures to OIG and MSA management, though covered by § 4712, predate Olech's paid administrative leave and termination in 2022 by nearly four years. Similarly, Olech's 2019 interview with DHP predates her termination by roughly

[4] In her brief, Olech asserts that she made protected disclosures in late 2021 and continuing into early 2022, but this is absent from her complaint. (Pl.'s Opp. Mem. at 5, 13.) Paragraphs 14 through 20 of the complaint only detail reports made in 2016 through 2019. And Olech recording her own observations of the August 6, 2021 incident in her Encounter Notes is not, by itself, a "disclosure." Disclosure requires a recipient other than the discloser. The statute expressly contemplates that whistleblower reports are made "to a person or body." 41 U.S.C. § 4712(a)(1). Therefore, the only relevant disclosures to DHP are Olech's interviews with DHP in 2019 and 2022.

three years. These multi-year gaps are simply too long to support an inference that any of her disclosures from 2016 to 2019 were contributing factors to MSA's employment actions in 2022. *See, e.g.*, *Costello v. MSPB,* 182 F.3d 1372, 1377 (Fed. Cir. 1999) ("A two-year gap between the disclosures and the allegedly retaliatory action is too long an interval to justify an inference of cause and effect between the two . . . ."); *Feldman*, 752 F.3d at 349 ("Such a lengthy gap in time [approximately twenty months] weighs against a finding that it is more likely than not that the alleged protected activities played a role in [plaintiff's] termination.") Therefore, Olech has not met her *prima facie* burden of demonstrating that any of her protected disclosures to OIG in 2018, to MSA management from 2016 to 2018, or to DHP in 2019 were a contributing factor in MSA's adverse personnel actions against her.

However, the court finds that Olech has made a *prima facie* case that her 2022 interview with DHP was a contributing factor to MSA's adverse personnel action against her. On July 18, 2022, Olech was interviewed by DHP about the August 6, 2021 safety incident. (Compl. ¶¶ 24, 42.) The next day, MSA terminated her employment. (*Id.* ¶¶ 25, 59.) A reasonable person could conclude that based on the close temporal proximity of the two events, Olech's protected disclosure to DHP was a contributing factor for her termination. *See* 5 U.S.C. § 1221(e)(1)(B). At this procedural stage, Olech has met the "rather light burden of showing by a preponderance of evidence that the activities tended to affect [her] termination in at least some way." *Feldman*, 752 F.3d at 348; *see, e.g.*, *Finley*, 146 F.4th at 390 ("In the usual case, a showing of close temporal proximity alone is sufficient to demonstrate causation."); *Stewart v. Doral Fin. Corp.*, 997 F. Supp. 2d 129, 138–39 (D.P.R. 2014) ("[T]he mere temporal proximity

between the protected activity and the adverse employment action [approximately one month] creates the inference that the protected activity was a contributing factor in [plaintiff's] termination."); *Erhart v. BofI Holding, Inc.*, 269 F. Supp. 3d 1059, 1076 (S.D. Cal. 2017) ("[Defendant's] alleged retaliatory conduct occurred within close temporal proximity to [plaintiff's] purported whistleblowing activities. Causation, therefore, can be inferred from the timing alone.").

MSA argues that Olech failed to make a *prima facie* case because she admits that she sent MSA documents to her personal email, allegedly in violation of MSA's confidentiality and document policies. (Def.'s Supp. Mem. at 5–6; Def.'s Reply at 1–3; Compl. ¶¶ 23, 25.) But "an 'intervening event' is not a talisman that makes all other evidence of causation disappear, establishing conclusively that there can be no connection between protected activity and an adverse action." *Finley*, 146 F.4th at 391. Put simply, the fact that MSA may have had a legitimate basis for terminating Olech does not negate her allegation that her protected disclosures "tend[ed] to affect in any way" her termination. *Feldman*, 752 F.3d at 348. At the pleading stage, it is sufficient that Olech's complaint alleges that a protected disclosure played *some* role in her termination, even if MSA had other legitimate reasons to fire her. Whether MSA would have taken the same action against Olech even absent any protected disclosure is a defense that MSA may raise at summary judgment or trial, but not at the motion to dismiss stage.

### D. Scope of Remedies

Finally, MSA argues that certain aspects of Olech's relief requested relief are not permitted by § 4712 and should be struck. (Def.'s Supp. Mem. at 9–11.) The statute permits plaintiffs to "bring a de novo action at law or equity . . . to seek compensatory damages and other relief available under this section" in the appropriate federal district court. 41 U.S.C. § 4712(c)(2). The court interprets "other relief available under this section" to refer to the remedies that an agency may order under § 4712(c)(1). These remedies include ordering the contractor to "take affirmative action to abate the reprisal," reinstating the complainant with backpay, and compensating the complainant for costs and expenses in bringing the complaint. *Id.* § 4712(c)(2)(A)–(C).

Section 4712(c)(1) allows for "compensatory damages." It is black-letter law that compensatory damages include nonpecuniary harms such as harms to reputation or emotional distress. Restatement (Second) of Torts § 905. Furthermore, the statute allows plaintiffs to bring actions in equity and authorizes the issuance of orders to the contractor to "take affirmative action to abate the reprisal." 41 U.S.C. § 4712(c)(1)(A). Therefore, the terms of the statute are broad enough to encompass the relief that Olech requests. Of course, whether Olech is actually entitled to any of the relief she requests is yet to be determined. But § 4712 does not preclude her at this stage from asking for broad remedies in her complaint.

## IV. Conclusion

For the reasons stated, the court **DENIES** MSA's motion to dismiss and **GRANTS in part** and **DENIES in part** MSA's motion in the alternative to strike. (Dkt. 4.) The motion

to strike is **GRANTED** only as to paragraphs 46, 47, 48, 49, 50, 51, 52, 53, 54, 55, 56, 60, 72(a), 72(b), and 72(c) of the complaint. The motion is **DENIED** in all other respects.

An appropriate Order will issue.

**ENTERED** this 13th day of November, 2026.

HON. JASMINE H. YOON
UNITED STATES DISTRICT JUDGE